MRS. FANNIE HANCOCK V. W. F. MOORE.

No. 7681. Decided January 15, 1941.
(146 S. W., 2d Series, 369.)

620

*Moore and Moore,* of Paris, for plaintiff in error.

The Court of Civil Appeals committed error in concluding that the finding that plaintiff's land was lost to her by erosion was based on contradictory testimony and that such finding was binding upon said court, for the reason that such uncontradicted evidence conclusively shows that plaintiff's land was never entirely lost to her by the processes of erosion on account of the encroachment of the waters of Red River. Randolph v. Hinch, 277 Ill. 11, 115 N. E. 182; Keel v. Sutton, 142 Tenn. 341, 219 S. W. 351; Mulvy v. Norton, 100 N. Y. 424, 3 N. E. 581, 53 Am. Rep., 406.

*Long & Wortham* and *Elisha Myers,* of Paris, for defendant in error.

On the question of erosion: Fulton v. Frandolig, 63 Texas 330; Manry v. Robinson, 122 Texas 213, 56 S. W. (2d) 438.

MR. JUDGE GERMAN, of the Commission of Appeals, delivered the opinion for the Court.

This suit was filed in the District Court of Lamar County by Mrs. Fannie Hancock as plaintiff. She will be so designated here. It was against W. F. Moore, who will be referred to herein as defendant.

The suit was in the nature of trespass to try title, and involved a tract of 125 1/2 acres of the Bennett T. Logan Survey, with an additional acreage alleged to be an accretion to said tract. The 125 1/2 acres was formerly a part of a 327 acre tract out of the Logan Survey, which 327 acres was bounded on the south by the north line of the Craddock and

Coles 500 acres, and bounded on the north by the Red River. The basic deed in the chain of title under which plaintiff claims contained the following description:

A part of the Bennett T. Logan Headright Survey.

Beginning at a stake on the bank of Red River, it being the N. W. corner of the Hd. Right Survey;

Thence South with the W. B. Line of the same 28 poles to a stake;

Thence East 144 poles to a stake;

Thence North 34 poles to a stake;

Thence West 58 poles to a stake;

Thence North 23 1/2 East 202 poles to a stake on the bank of Red River;

Thence up said River with is meanderings to the place of beginning, containing 125 1/2 acres of land, more or less.

Judgment was rendered in the trial court against plaintiff and this judgment was affirmed by the Court of Civil Appeals in a very comprehensive opinion. 137 S. W. (2d) 45. The trial court made elaborate findings of fact, most of which are set out in the opinion of the Court of Civil Appeals.

When writ of error was granted in this cause, the Court was under the impression that important question of law concerning accretions and erosions were involved. Upon a very careful examination of the record we have reached the conclusion that a correct disposition of the case depends upon questions of fact, which have been determined by the trial court and approved by the Court of Civil Appeals. Due to the fact that the Court of Civil Appeals has elaborately discussed these questions and has set out in great detail the essential facts, it becomes wholly unnecessary for us to write a lengthy opinion.

It will be observed that the Court of Civil Appeals affirmed the judgment of the trial court upon two theories: First, that plaintiff had failed to properly and accurately identify the land sued for in her petition; and second, upon the ground that the 125 1/2 acres in question had been lost by erosion, due to the many changes in the bed of Red River since 1880, the date upon which the 125 1/2 acres was segregated from the Logan Survey.

In connection with the first proposition we call attention to the fact that plaintiff, in order to identify the tract of land above described in detail, rested upon the assumption that the south line of same was the north line of the Craddock and Coles

500 acre tract. If this assumption were correct, then it would become an easy matter to locate the 125 1/2 acres, and there would remain only the question of erosion. It will be noted, however, that in the description above set out the call was for beginning on the bank of Red River and thence south 28 poles to a stake. It is significant that no call was made for the corner or line of the Craddock and Coles tract. In connection with the location of the corners and lines of this 125 1/2 acre tract, the trial court made the following finding:

"The beginning point of the description of the land conveyed by Nannie Hancock and G. W. Hancock to Jeff Hancock by deed dated February 5, 1880, is not capable of being definitely located on the ground by reason of the various changes of Red River since the date of said deed. And the exact location of the 125 1/2 acres of land described in said deed cannot be definitely determined. But the south boundary line of the said 125 1/2 acres of land conveyed by Nannie Hancock and G. W. Hancock to Jeff Hancock on February 10, 1880, is somewhere approximately one-fourth of a mile north of the north boundary line of the Craddock and Coles' 500 acre tract."

An examination of the statement of facts shows that this finding is strongly supported by the proof in the case. As plaintiff described the land sued for as beginning at the northwest corner of the Craddock and Coles 500 acres and running east with its north line, it will thus be seen that she wholly failed to prove title to the land as thus described. It being shown that the deed under which plaintiff claims had its south line approximately one fourth of a mile north of the boundary of the Craddock and Coles 500 acre tract, if we still assume that the description contained in plaintiff's petition would still include some portion of the 125 1/2 acres as thus located, yet the quantity and location of such remainder is wholly uncertain, and the evidence does not indicate that it could ever be determined with certainty.

But if it were possible for plaintiff to make additional proof in this regard, we are of the opinion that the further findings of the trial court wholly preclude a recovery. Among these findings of the trial court are the following:

"8. From February 5, 1880 (the date of the deed from Nannie Hancock and husband, G. W. Hancock, to Jeff Hancock), to 1915, the waters of Red River at intervals washed and overflowed the south bank of said river until the land described in

the deed to Jeff Hancock was taken and eroded by the gradual eating away of the south bank of Red River.

"9. In 1915, Red River, by its gradual encroachment upon the land to its south, had eroded and taken away the land on its south bank to the extent that in said year the south bank of the river in said year was south of the north boundary line of the Craddock and Coles 500 acre tract on the northwest corner thereof.

"10. By the gradual change of Red River and the encroachments thereof upon the land described in the deed from Nannie Hancock and G. W. Hancock to Jeff Hancock (of date Feb. 5, 1880), all of the land described in that deed was washed away and taken by the erosive processes of Red River as it gradually changed its course to the south.

"11. Sometime in 1915 Red River began receding to the north, and since that time has gradually receded to the northward to where it now runs a distance of a mile or more north from its place of furthest advance south in the year 1915.

"The movement of the river northward was accompanied by accretions and deposits of the river to the land bordering on its south bank, during the time from the year 1915 to date.

"The land lying between the south bank of Red River as it ran during its furthest advance southward in the year 1915, and the south bank of Red River where it now runs, is land formed by deposits and accretions by the river as it receded gradually to its present location on the ground."

In the case of Oklahoma v. Texas, 260 U. S. 606, 67 Law Ed. 428, the Supreme Court of the United States adopted the law announced in the former case of Nebraska v. Iowa, 143 U. S. 359, as applicable to the Red River. In that case it was held that notwithstanding the rapidity and suddenness of changes in the channel of the Red River, so long as the soil is eroded and passes away, so as to become the locus of the river's bed, the ordinary rules with reference to erosions and accretions applies. Tested by this rule of law the trial court was amply justified in its conclusion that the washing away of the 125 1/2 acres, as originally located, by reason of the encroachment of the south bank of the Red River, constituted an erosion, so that title to said tract was entirely lost, and was further justified in the conclusion that when the river receded to the north, in the manner as found, the land which again appeared in this location was an accretion to other lands.

We are clearly of the opinion that the question of erosion and accretion, under the circumstances, was one of fact, and

that the findings of the trial court in this respect are amply supported by the evidence.

For the reason stated, the judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court January 15, 1941.