**WHITTENBURG et al. v. STATE.**

No. 11295.

Court of Civil Appeals of Texas. Galveston.

Dec. 4, 1941.

Rehearing Denied Jan. 8, 1942.

Sanders & Scott, of Amarillo, for appellants.

Gerald C. Mann, Atty. Gen., of Texas, James Noel, Asst. Atty. Gen., for appellee State.

Kilgore & Rogers, of Wichita Falls, Tex. (C. E. Cooper and Wm. I. Robinson, both of Tulsa, Okl., of counsel), for appellees Midstates Oil Corp. and others.

GRAVES, Justice.

This appeal is from a judgment of the 53rd District Court of Travis County, sitting without a jury, overruling the pleas of privilege and in abatement of the appellants to be sued in Hutchinson County, where it lay, as to 99.98 acres of the land involved, and awarding the appellee State, as against them, the title to and possession of the whole of 1862.53 acres of land, more or less, described generally thus: "* * * lying in Hutchinson County, Texas, bounded on the east by a projection southerly of the East line of Section 16, Block 47, H. & T. C. R. R. Co. surveys, on the West by a projection northerly of the West line of Section 62, Block 46, H. & T. C. R. R. Co. surveys, on the North by the North line of the bed of Canadian river, and on the south by the south line of the bed of said river, and as more particularly described in plaintiff's Third Amended Original Petition, as follows:"

It further decreed that the State recover the title to the same land against Midstates Oil Corporation and J. A. McCarty, who claimed ownership of pre-existing mineral lease thereon, No. MF18164, issued by the State originally to J. Gordon Burch, but validated that lease as such, and vested the entire leasehold estate thereunder in the Midstates Oil Corporation, to which McCarty had assigned all his interest therein.

Only the Whittenburgs et al., who are named in the bond as the appellants, are before this court, as against the State, such leasehold claimants below having neither come nor been brought here by the other parties.

These appellants (referred to in both briefs as "the Whittenburgs") inveigh against the judgment so adverse to them below upon these two points: (1) The court erred in overruling their pleas of privilege and in abatement; (2) there was no proof of any riparian change in the lands so sued for and recovered by the State, save by the natural process of avulsion; hence the change the evidence reflected in such lands did not divest the appellants of their title thereto as prior riparian owners thereof.

The appellee State sued the appellants in trespass to try title for the land, alleging it all to be a portion of the bed of the Canadian river, and the trial court, after the receipt of extensive evidence, found it to be such, both as a matter of fact and of law, and supported its judgment by stated findings of both sorts, as requested by the appellants.

This court is unable to see eye-to-eye with appellants in either of their contentions, concluding rather that the trial court was correct upon both features in the judgment rendered.

In other words, as to the first of them—the overruling of the pleas challenging the venue in Travis County as to 99.98 acres of the land—that question is held to have been foreclosed the other way, upon facts not in legal effect different from those here obtaining, by the decision of the Austin Court of Civil Appeals in Stanolind Oil & Gas Co. v. State, 153 S.W.2d 614.

As to the second, the trial court made these findings:

"I find that all the changes in the meander line of the banks of the Canadian River, as shown by the evidence, were due to erosion and not avulsion."

"That all the changes in the banks of the river are erosive in character and that the boundaries of the land owned by the defendants Whittenburgs followed such changes."

These findings are determined to have been fully supported by the evidence, as against the appellants' attacks thereon, and, upon them, together with the cognate findings otherwise stated, it is likewise held that this question has already been decided adversely to appellants, upon analogous facts, by the action of the Supreme Court of Texas in these two cases: Hancock v. Moore, 135 Tex. 619, 146 S.W. 2d 369; Denny v. Cotton, 3 Tex.Civ.App. 634, 22 S.W. 122, writ of error denied.

While further opinion would not seem to be necessary, to concrete these holdings to the particular facts appearing, this much of the appellee's brief is, in substance, quoted with approval as supporting the holdings made:

"The State as plaintiff filed this suit in the district court of Travis County, prior to the 1939 amendment to Article 5420, seeking in trespass to try title to recover a portion of the alleged bed of the Canadian river; it was admitted that the

Canadian river was—statutorily—a navigable stream; the state's amended petition, filed subsequent to the effective date of such 1939 amendment to Article 5420, sought to recover the river-bed in the identical area, the only change in the latest amendment being in the field notes of the meander lines of the north and south banks of the river in the area in controversy, resulting from changes shown to have been made in the river banks between May, 1935, and May, 1938. * * * Article 5420, as it existed prior to the 1939 amendment, authorized the Attorney General to institute suit for the State to recover State land and fix the venue 'in Travis County concurrently with the county of defendant's residence and the county where the land lies.' The 1939 amendment provided that all suits so brought must be brought in the county in which the land or any part thereof may lie, but provided 'nothing in this Act shall affect or apply to any suit or suits pending at the time this Act shall become effective.' This amendment became effective May 10, 1939. The State was suing to recover the claimed river-bed of the Canadian river from a point beginning 802.5 vrs. south of the northeast corner of survey 16, block 27, H. & T. C.; thence south, crossing the Canadian river, to an iron pipe on the south bank, and thence 'with the meanders of the bank of said river as follows'. The meanders of the bank were then set out in detail to a point in the west line of H. & T. C. Survey 62, block 46; thence crossing the Canadian river to an iron pipe, a corner on the north bank of the river and thence 'with the meanders of said river as follows', setting out the meanders in particular to the place of beginning. From this it is apparent that there was a suit pending for the recovery of the river-bed between the east line of section 16, block 47, and the west line of section 62, block 46.

"The Third Amended Original Petition was filed February 18, 1941, after the effective date of the amendment to the act. It described the land involved as beginning at a point on the east line of H. & T. C. Ry. Co. survey 16, block 47,575.5 vrs. south of the northeast corner, running 'thence with the meanders of the north bank of the Canadian river as follows'. The minute meanders of the north bank were set out to a point from which. the field notes ran south 0 deg. 08 min. 30

sec. west, 2758.2 vrs. to a point on the south bank of the Canadian river in the west line of H. & T. C. Ry. Co. survey 62, block 47; from there 'thence north with the meanders of the south bank of said Canadian river as follows', setting out thereafter the minute meanders of said south bank to a point 'due south of the place of beginning', 'thence north crossing the Canadian river 3194.9 vrs. to the place of beginning.' In all other respects such two amended petitions are identical.

"The case at bar, therefore, presents the same situation decided by the court of civil appeals at Austin in Stanolind Oil & Gas Company v. State, 153 S.W.2d, 614. The court in the Stanolind case pointed out the distinction between the situation there presented and the situation presented by such cases as Schoonmaker v. Clardy [Tex. Com.App.] 244 S.W. 124; Bowles v. Smith [Tex.Civ.App.] 34 S.W. 381; and Taylor v. Brown [8 Tex.Civ.App. 261] 27 S.W. 911.

"An examination of the pleadings in this case shows that at all times the State in this suit sought to recover the bed of the Canadian river between the east line of Section 16, Block 47, and the west line of Section 62, Block 46, H. & T. C. R. R. Co., in Hutchinson County, Texas. The field notes in the Second Amended Original Petition call to run with the meanders of the north and south bank of the river at every point other than the lines of the eastern extremity and the western extremity of the area in controversy. By the Third Amended Original Petition the State still seeks to recover the river-bed in the area bounded on the east and west by lines identically located. In both petitions the east boundary of the area in controversy is a southerly extension of the east line of Section 16, Block 47, and in both petitions the western boundary of the area in controversy is a northern extension of the west line of survey 62, block 46. The remaining lines in both petitions are respectively the north bank and the south bank of the river. The amended petition served only to bring up to date the changes in these bank lines effected by action of the river occuring between May, 1935, and May, 1938, the dates when the banks were respectively surveyed.

"Since the State had a suit pending for the recovery of the bed of the Canadian

river at the time the amending Act went into effect, the amending Act, by its own terms, expressly excludes itself from application to the case at bar. * * *

"Appellants do not deny that the State has title to the bed of the Canadian river, either as it originally existed at the time of original survey, or to whatever extent the bed has been moved or enlarged by the process of erosion. By inference they concede that the State's title to the area in controversy is established, if the changes shown by the evidence are erosive.

"This narrows the question, then to whether or not erosion, as distinguished from avulsion, occurred. Their whole position in contending for avulsion is bottomed upon the rapidity and visibility of change.

"Unfortunately for appellants, the courts have heretofore decided this question.

"The Supreme Court of the United States, in the case of Oklahoma v. Texas, 260 U.S. 606 [43 S.Ct. 221] 67 L.Ed. 428, discussed the physical characteristics of Red river, as reflected by the evidence in that case, which evidence is in many respects similar to this evidence. There the same contention was made that avulsion, rather than erosion, was evident, because of the rapidity and visibility of change. Holding that the matter of rapidity and visibility did not require a holding .of avulsion as distinguished from erosion, the court quoted from the decision in Nebraska v. Iowa, 143 U.S. 359 [12 S.Ct. 396] 36 L.Ed. 186, and concluded as follows * * * [260 U.S. 606, 43 S.Ct. 227, 67 L.Ed. 428]:

" 'Our conclusions are that, notwithstanding the rapidity of the changes in the course of the channel, and the washing from the one side and onto the other, the law of accretion controls on the Missouri river, as elsewhere, and that not only in respect to the rights of individual landowners, but also in respect to the boundary lines between states.'

"The Supreme Court of Texas, in Hancock v. Moore [135 Tex. 619] 146 S.W. 2d 369 [370] supra, * * * refers to the case of Oklahoma v. Texas, supra, and Nebraska v. Iowa, supra, approving those holdings to the effect that:

" 'Notwithstanding the rapidity and suddenness of changes in the channel of the Red River, so long as the soil is eroded and passes away, so as to become the locus of the river's bed, the ordinary rules with reference to erosions and accretions apply. * * * We are clearly of the opinion that the question of erosion and accretion, under the circumstances, was one of fact, and that the findings of the trial court in this respect are amply supported by the evidence.'

"Applying these principles to the facts adduced·on the trial of the case at bar, certainly the evidence established erosion, and not avulsion. None of the soil which, at any time, formed a part of either bank was by sudden change cut off by a change in the channel of the river and left in the original state on the opposite bank of the river. Every bit of soil, which at any time formed part of either bank of the Canadian river, was washed off of that bank, disintegrated in the water, washed downstream, and deposited elsewhere in some position which 'no engineering skill' could identify or determine. The evidence does not show that the Canadian river has abandoned its original bed and by an avulsion change occupied a new bed, leaving in its original form land that formerly constituted its banks. Instead, by natural processes (to some extent slow and imperceptible, to some extent rapid and visible) the channel has become shallower and wider, land which formed its banks has been dissolved, disintegrated, and washed downstream to places unknown and unknowable. * * *

"Appellants state, in substance, that they have made a diligent search and have been unable to find any case, wherein the courts have applied riparian law to the segregated mineral estate under the surface. Counsel have overlooked the famous case of Oklahoma v. Texas, 260 U.S. 606 [43 S. Ct. 221] 67 L.Ed. 428. This suit was brought about because of the oil development in Red River, and it will be remembered that a receiver was appointed to take over development and operations pending litigation. See orders entered by the Supreme Court of the United States in that case, reported in 252 U.S. 372 [40 S.Ct. 353] 64 L.Ed. 619; 256 U.S. [602], 604 [41 S.Ct. 539], 65 L.Ed. 1115; 258 U.S. [574], 578 [42 S.Ct. 406], 66 L.Ed. [771], 773. In that case the court adopted the rule of law laid down in Nebraska v. Iowa, supra."

The judgment will be affirmed.

Affirmed.