

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00119-CV

---

**DOUGLAS D. MCLEAN, INDIVIDUALLY, DOUGLAS D. MCLEAN, TRUSTEE OF THE MICHAEL L. STONER MARITAL DEDUCTION[1] TRUST, APPELLANTS**

**V.**

**SCARLETT MAWHIRTER, APPELLEE**

---

On Appeal from the 38th District Court
Uvalde County, Texas
Trial Court No. 2022-07-34464-CV, Honorable Camile G. DuBose, Presiding

---

March 22, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

This appeal arises out of a property dispute concerning land bordering the Frio River. Appellant, Douglas D. McLean, Individually and as Trustee of the Michael L. Stoner Marital Deduction Trust and the Michael L. Stoner Unified Credit Trust ("McLean"), challenges a summary judgment granted in favor of Appellee, Scarlett Mawhirter, granting

---

[1] The final judgment signed by the trial court uses the word "Division" in the style of the case. However, the correct name of the party is Michael L. Stoner Marital Deduction Trust.

her title to the disputed property. McLean raises the following issues: (1) the trial court erred in construing a 2002 executrix's deed rather than a 1961 "carve-off" deed; (2) the trial court erred in its construction of the 2002 executrix's deed—the source of Mawhirter's title; (3) summary judgment should not have been granted when genuine issues of material fact existed; and (4) the trial court granted more acreage than prayed for in the summary judgment. We affirm the trial court's order as modified.[2]

## BACKGROUND

This boundary dispute arises out of competing claims to land on the bank of the Frio River. The parties do not dispute the chain of title; they only dispute the interpretation of the metes-and-bounds description in the deed from which Mawhirter gained her interest.

Mawhirter and McLean each own property directly across from each other on both sides of the Frio River. They each received their property from a common source in the chain of title: the Estate of Michael Stoner, Deceased. Stoner purchased land spanning both sides of the Frio River in 1960 with his wife, Bonnie. The contentious metes-and-bounds description first appeared in a deed in 1961 from Stoner and Bonnie to a third-party, effectively "carving out" a piece of land from the northwest corner of his property (the Carve-Out Deed). However, on the same day of the conveyance, the third-party grantee also executed a quitclaim of the tract back to Stoner, effectively canceling the

---

[2] Originally appealed to the Fourth Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between the precedent of the Fourth Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the Fourth Court of Appeals. TEX. R. APP. P. 41.3.

2

transaction. Both the Carve-Out Deed and the quitclaim deed contained identical metes-and-bounds descriptions ending with "all according to survey made by John H. Poerner, registered Public Surveyor on January 30, 1961." However, Poerner's survey was never filed in the property records.

Sometime later, Bonnie passed away and Stoner married Mawhirter's mother, Roann. Upon his death, Stoner left to Roann "any interest which I may have in the 3.503 acres of land in Uvalde County, Texas, which constitutes my residence." He also named Roann as the executrix of his will. Roann, as executrix, executed a Correction Executrix Deed (the "Source Deed"), in which she conveyed to herself a tract with a metes-and-bounds description identical to the one used in the Carve-Out Deed (the "Mawhirter Tract").[3] Title to the property subsequently passed to Mawhirter through the probate of Roann's estate in 2020.

The dispute concerns the strip of land along the bank of the Frio on Mawhirter's side of the river. The disputed strip is the only way for Mawhirter to access the river from her property. The underlying trespass-to-try-title suit was filed by Mawhirter when, as she alleges, McLean told her guests they were trespassing when they attempted to use the disputed strip to access the river. During the pendency of trial, Mawhirter filed a traditional motion for summary judgment on her trespass-to-try-title claim, and McLean filed his own motions for traditional and no-evidence summary judgment in opposition. The trial court,

---

[3] Roann also conveyed, as executrix, the residue of Stoner's property to the trusts for which McLean serves as trustee and beneficiary, saving and excepting from the conveyances the Mawhirter Tract. Because there is no metes-and-bounds description in these deeds, the boundaries of McLean's property are defined by the boundaries of the Mawhirter Tract.

after a hearing, granted Mawhirter's motion for summary judgment and denied McLean's motions, from which McLean appeals.

The parties agree on the chain of title, including that the parties' common predecessor-in-interest, Michael Stoner, owned the riverbed underlying the portion of the Frio River next to the Mawhirter Tract.[4] The parties agree there is no ambiguity in the deeds forming their chain of title, and there are no genuine issues of material fact precluding the granting of summary judgment.[5] The only disagreement between the parties is the boundary of the Mawhirter Tract and whether or not it includes the disputed strip.

## STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citations omitted). The construction of an unambiguous deed is a question of law for the court. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991) (citation omitted). The primary duty of a court when construing such a deed is to ascertain the intent of the parties from all of the language in the deed by a

---

[4] Though interpleaded, the State declined to intervene in this suit, thereby relinquishing any claim of title to the riverbed under the Small Bill. *See* TEX. REV. CIV. STAT. art. 5414a; *Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 653–57 (Tex. 2020). Due to the passage of the 1837 Navigable Stream Statute, the State declared ownership of all navigable streams, but this created a conflict with prior patents it issued to private landowners in which it conveyed the riverbed. The Small Bill, passed in 1929, was enacted to resolve the conflicts between the Navigable Stream Statute and the prior patents, and the State quitclaimed title to the riverbeds it previously conveyed. *Lone Oak Club, LLC*, 601 S.W.3d at 645–46.

[5] Although McLean argues in the alternative there is a genuine issue of material fact, his arguments concern only the interpretation of the deeds in the chain of title. Interpretation of a deed is a question of law not an issue of fact, and he has failed to identify any issue of fact which would preclude summary judgment. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018) (citing *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 787 (Tex. 2017); *Progressive Cty. Mut. Ins. v. Kelley*, 284 S.W.3d 805, 808 (Tex. 2009)).

fundamental rule of construction known as the "four-corners" rule. *Id.* We consider the entire agreement and, to the extent possible, resolve any conflicts by harmonizing the agreement's provisions, rather than by applying arbitrary or mechanical default rules. *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 744 (Tex. 2020) (citing *Wenske v. Ealy*, 521 S.W.3d 791, 796 (Tex. 2017)).

## ANALYSIS

### ISSUES ONE, THREE, AND FOUR—PROCEDURAL PROPRIETY OF SUMMARY JUDGMENT

Issue two is dispositive of this appeal. However, we dispose of issues one, three, and four by which McLean attacks the procedural propriety of the summary judgment itself. Those issues will be subsumed by our determination that summary judgment was proper to be discussed herein.

By his first issue, McLean maintains the trial court construed the wrong deed. By his third issue, he argues genuine issues of material fact precluded summary judgment. And finally, by his fourth issue, he asserts the trial court granted more acreage than requested in the prayer. We find the trial court construed the correct deed,[6] the parties agreed on the chain of title and McLean did not raise any fact issue regarding chain of title, and our interpretation of the Source Deed is an objective determination of the parties' intended conveyance independent of what they may have mistakenly believed was

---

[6] McLean urges we interpret the Carve-Out Deed instead of the Source Deed. As noted above, the Carve-Out Deed was "canceled" by a quitclaim deed, and the Source Deed, containing exactly the same metes-and-bounds description, is the instrument by which Mawhirter gained her interest. Thus, the correct instrument to interpret is the Source Deed.

conveyed. Thus, issues one, three, and four are overruled because summary judgment was properly granted.

**ISSUE TWO—CONSTRUCTION OF THE SOURCE DEED**

McLean argues the trial court erred in construing the call in the Source Deed to the "high bank" as being the same as a call to the bank of the Frio River. We disagree.

The only disagreement between the parties is the interpretation of the metes-and-bounds description found in the Source Deed, specifically the significance of a call to the "high bank" of the Frio River. Mawhirter claims the "high bank" is the same as the bank of the Frio, and her property includes all the land between the high bank and the middle of the river, including the disputed strip. McLean, on the other hand, contends the "high bank" is a feature different from the bank of the river, and therefore the Mawhirter Tract ends at the high bank, leaving him and his trusts with the title to the disputed strip. For the reasons below, we hold the call to the "high bank" in the Source Deed is the same as a call to the river's bank.

It is a general rule in Texas property law that a call to the bank of a stream is a call to the center of the stream. *Moore v. Ashbrook*, 197 S.W.2d 516, 517–18 (Tex. App.—San Antonio 1946, writ ref'd); *Strayhorn v. Jones*, 300 S.W.2d 623, 632 (Tex. 1957); *Hejl v. Wirth*, 343 S.W.2d 226, 229 (Tex. 1961). This rule of construction is based on Texas's public policy that owners of property adjacent to a river should be able to access the river to have full use and enjoyment of their property. *Dutton v. Vierling*, 152 S.W. 450, 452 (Tex. App.—Austin 1912, no writ). The general rule is followed unless the deed expresses a contrary intention to reserve a strip of land between the property and the river to the

6

grantor. *Hejl*, 343 S.W.2d at 229. Thus, if the "high bank" is the same as the bank of the river, the Mawhirter Tract's boundaries extend below the "high bank" to the middle of the bed of the Frio River.

The definition of the bank of a river adopted by the Texas Supreme Court is as follows:

> According to the rules announced in *Oklahoma v. Texas*, and adopted by our Court in *Motl*, *Diversion*, and *Maufrais*, the bank along which to determine the gradient boundary of a navigable stream:
>
> . . . is the water-washed and relatively permanent elevation or acclivity at the outer line of the river bed which separates the bed from the adjacent upland, whether valley or hill, and serves to confine the waters within the bed and to preserve the course of the river. . . .
>
> This bank is typically "an accretion bank," and "seldom an erosion or 'cut bank.'"

*Brainard v. State*, 12 S.W.3d 6, 15–18 (Tex. 1999) (citations omitted), *disapproved of on other grounds by Martin v. Amerman*, 133 S.W.3d 262, 267–68 (Tex. 2004).[7]

The parties agree the "high bank" is the top of the steep elevation immediately adjacent to the Frio River, often referred to as an "accretion bank." *See generally Severance v. Patterson*, 370 S.W.3d 705, 722 (Tex. 2012)*; Lund v. Doyno*, 91 S.W.2d 315, 316–17 (Tex. 1936); *Hancock v. Moore*, 146 S.W.2d 369, 370 (Tex. 1941). The "high bank" also confines the Frio River "within the bed" and "preserve[s] the course of the river." The "high bank" and the "low bank" compose a single, continuous slope upward

---

[7] Because the parties have agreed the title to the riverbed passed to Stoner by virtue of the Small Bill, the area in which the riverbed exists must necessarily qualify as a "navigable stream." There must be defined banks for the river to qualify as a "navigable stream" to pass title to the bed of the river from the State to the parties under the Small Bill. *Lone Oak Club, LLC*, 601 S.W.3d at 658.

away from the river's water, the top of which separates the river from the "upland" area where Mawhirter's property is located. The summary judgment evidence contains photographs depicting a stone staircase descending from the "high bank" to the lower bank near the river, the only means to access the river from Mawhirter's property. We also find no express reservation of the strip of land in the Source Deed, and the metes-and-bounds description follows the meander of the "high bank" and does not present any contrary intention to reserve the land adjacent to the river. *Compare Hejl*, 343 S.W.2d at 229–30; *cf. Ulbricht v. Friedsam*, 325 S.W.2d 669, 672 (Tex. 1959) (land below a meander line is conveyed if it is adjacent to a stream or river). Under these circumstances, we conclude the "high bank" *is* the bank of the Frio River. To hold otherwise would leave a strip of land which has no other purpose and would be contrary to the policy rationale behind the general rule to permit access to owners of land adjacent to a river or stream.

McLean nonetheless argues the Source Deed expresses the intention of the grantor to reserve the disputed strip. He argues the intention on the face of the Source Deed was to reserve the strip, manifest in the fact the surveyor chose not to go down the stone staircase and survey the "low bank" in 1961. This argument is flawed for two reasons: (1) as we already stated, as a matter of law, the "high bank" is the bank of the Frio River; and (2) the argument goes outside the four corners of the deed as there is no mention of the staircase in the metes-and-bounds description, and, absent an ambiguity, we may not consider this fact in interpreting the deed. *Nettye Engler Energy, LP v. BlueStone Nat. Res. II, LLC*, 639 S.W.3d 682, 690 (Tex. 2022).

Because we hold, as a matter of law, the call to the "high bank" of the river is a call to the river's bank, it follows the call to the "high bank" is also a call to the center of the

8

Frio River.  *Supra.*  Accordingly, the Source Deed granted the disputed strip to Roann, and Mawhirter now has title to the disputed strip.  We conclude the trial court did not err in granting summary judgment to Mawhirter.  McLean's second issue is overruled.

<h2 style="text-align:center">REFORMATION OF JUDGMENT</h2>

The parties have brought to our attention, and both agree, there is a typographical error in the final judgment from the trial court.  The Court of Appeals has the power to modify judgments.  TEX. R. APP. P. 43.2(b); *Liska v. Dworaczyk*, No. 04-22-00170-CV, 2024 Tex. App. LEXIS 457, at *20 (Tex. App.—San Antonio Jan. 24, 2024, no pet. h.) (mem. op.); *Moore v. Trevino*, 94 S.W.3d 723, 729 (Tex. App.—San Antonio 2002, pet. denied).  To avoid confusion and the creation of a latent ambiguity, we modify the final judgment of the trial court, rendered on December 13, 2022, and filed in the Uvalde County District Clerk's records on December 12, 2022, in Cause No. 2022-07-34464-CV as set out below.

The following course call is deleted:

S 01" 33' W

and replaced with:

S 01º 33' W

We also delete the following course call:

N 45" E

and replace it with:

9

N 45º E

The final judgment of the trial court is reformed according to the above modifications.

## CONCLUSION

We hold the trial court properly granted summary judgment. We also hold the judgment of the trial court is modified as set out above. As modified, the trial court's judgment is affirmed.

Alex Yarbrough
Justice

10