**FITZGERALD v. BOYLES, County Surveyor, et al.**

No. 9536.

Court of Civil Appeals of Texas. Galveston. April 23, 1931.

Rehearing Denied Dec. 7, 1933.

348

Heidingsfelder & Kahn and R. H. Ward, all of Houston, for appellant.

W. P. Hamblen and Wolters, Blanchard & Woodul, all of Houston, for appellees.

PLEASANTS, Chief Justice.

This is a suit by appellant, brought under article 5323, Revised Statutes (1925), for a mandamus to compel the county surveyor of Harris county to survey a tract of 15.03 acres of land described in the petition and claimed by appellant to be land belonging to the public free school fund of this state, and subject to sale by the commissioner of the general land office. All of the preliminaries required by the statute for the bringing and maintenance of the suit are alleged to have been complied with.

The county surveyor, appellee, Boyles, answered by general demurrer and interpleaded the adverse claimants who are also appellees herein. These interpleaded defendants asserted title to the land claiming it to be a part of the Johnson Hunter grant made in 1824, and to be owned and held by the defendants under title derived through and under Johnson Hunter.

The case was tried with a jury in the court below. After the evidence had all been presented, the trial judge refused a motion of appellant to instruct a verdict in his favor and granted a motion of defendants for an instructed verdict in their favor. Upon return of such instructed verdict, judgment was rendered in accordance therewith.

The record presents but two controlling questions: First, does the evidence present any issue as to the land in question being included in the Johnson Hunter grant, as that survey was originally made in 1824; and, second, if the land was at the time that survey was made submerged land covered by the ordinary high tides of Galveston Bay, and had become dry land by deposits of dredgings from the Houston Ship Channel subsequent to the construction of the channel about 1914, does such land belong to the public free school fund of this state?

We think both of these questions should be answered in the negative.

The field notes of the Johnson Hunter grant, which were made in 1824, call to begin at the lower corner of the Enoch Brinson league, which is "a stake set on the west bank of said San Jacinto River (or bay) by the side of a Cedar and four varas distant from an Elm 8 inches in diameter, North 18 degrees East and 1 vara from a white oak South 33 degrees East. Thence measured 1580 varas West to where a stake was set in the prarie. Thence South 5900 varas to where another stake was set in the prarie. Thence East 2550 varas to the Bay shore on a Cedar for corner; situated a distance of 73 varas from another Cedar, North 31 degrees East, and 33 varas from another Cedar, South 28 degrees West. Thence following the meanders of the bay and river to the place of beginning, containing 1 league of land in superfices, adjoining on the East Galveston Bay and the said river, on the North said river and Enoch Brinson."

There is no evidence showing the location of any of the corners or lines called for by these field notes, except the testimony of several witnesses for plaintiff and a recorded map or plat of the town of Bayview made by one of these witnesses in 1893, showing that the shore line of Galveston Bay called for in the original field notes of the Hunter grant was in 1893 some distance west of the land claimed by plaintiff to belong to the public free school fund of the state, and has been so located since that date, except as to the land in controversy, which was filled in by dredgings from the Houston Ship Channel between the years 1913 and 1915. Several of plaintiff's witnesses testified that the shore lines of Galveston Bay change from year to year, and that after each of the periodical gulf storms in this locality the shore lines are changed, extended out in some places and add-

ing to the dry land, and in other places washing away the land and bringing the shore line further in.

These facts are of such common knowledge that courts should judicially recognize and act upon them. We know as a matter of common knowledge that such storms have occurred periodically in the last fifty or sixty years, notably those of 1875, 1886, 1900, 1909, and 1915. With these facts of common knowledge in mind, the evidence only raises a conjecture or surmise as to the location of the east line of the Hunter grant in 1824, and it cannot be reasonably inferred from such evidence that at that time it was west of/the land in controversy. The burden of showing that this land was not included in the Hunter grant as that grant was originally surveyed and located was upon appellant, and, there being no evidence of sufficient strength to raise an issue as to the location of the boundaries of the Hunter grant as it was originally located, the trial court did not err in instructing a verdict for the defendants. We do not think it can be doubted that, if the land in controversy was west of the shore line of Galveston Bay when the Hunter grant was originally surveyed and located, the grantee and those holding under him have not lost title to the land by the encroachment thereover of the waters of the bay, and whenever the land so submerged, either by natural causes or lawful artificial means, was restored to its original condition, the right to its possession and occupancy by the holders of the original title became paramount. Fisher v. Barber, (Tex. Civ. App.) 21 S.W.(2d) 569.

If, however, it had been shown that this land was not included in the Hunter grant, we do not think it would belong to the public free school fund and be subject to sale in the manner provided by our statutes for the sale of lands belonging to that fund. Article 5416 of our Revised Statutes (1925) expressly excepts from the public domain thereby set apart to the permanent free school fund of the state "that included in lakes, bays and islands along the Gulf of Mexico within tidewater limits." It seems clear to us that under this statute no tidewater lands along Galveston Bay have been set apart to the permanent free school fund of the state; and if the shore line of Galveston Bay was west of this land when the Hunter grant was located, there being no evidence tending to show that this land was not at the time this statute was passed within tide water limits, it was not thereby set apart to the free school fund.

It follows that the judgment should be affirmed, and it has been so ordered.

Affirmed.

### On Motion for Rehearing.

Appellant very earnestly insists in his motion for rehearing that this court erred in the conclusion expressed in our original opinion that there is no evidence raising the issue of the location of the lines of the Johnson Hunter grant along the bay shore, at the time the original survey was made, at such position that would not include within the boundaries of the grant any portion of the land in controversy.

We do not think the conclusion complained of, if erroneous, is material, since the statute under which this suit is instituted has no application to any public lands other than those set apart to the public free schools.

As we interpret the statute setting apart to the public free school fund all of the unappropriated public domain, the land here involved was expressly excepted from such appropriation.

This statute (article 5416, Revised Statutes, 1925) expressly excepts from the grant to the permanent school fund of the state lands "included in lakes, bays and islands along the Gulf of Mexico within tidewater limits." If any part of the land in controversy was included within the original boundaries of the Hunter survey, and, by the operation of natural changes in the ebb and flow of the tides, it became submerged and so remained for a number of years, and by a similar process of nature it was subsequently placed above the ordinary high tides, it would not become public land, but would belong to the owner of that portion of the Hunter survey of which it was originally a part. Fisher v. Barber (Tex. Civ. App.) 21 S.W.(2d) 569. If, as claimed by appellant, the land was made by deposits thrown into the bay from excavations of the ship channel, it is clearly excepted in the statute above mentioned.

If the opinion in the Fisher Case, supra (in which no writ of error seems to have been sued out), is unsound, and in the circumstances shown by the evidence in that case the strip of land restored by a natural change in the operations of the tides became part of the public domain, it is just as clearly excepted from the grant made by the act appropriating to the permanent school fund of the state unappropriated public domain.

The motion for rehearing is refused.

Refused.