## KENTUCKY ELECTRIC POWER CO. v. NORTON COAL MINING CO.

## NORTON COAL MINING CO. v. KENTUCKY ELECTRIC POWER CO.

### Nos. 7626, 7627.

Circuit Court of Appeals, Sixth Circuit.
Jan. 18, 1938.

924

Frank B. Ober, of Baltimore, Md. (Gordon, Laurent, Ogden & Galphin, of Louisville, Ky., Ritchie, Janney, Ober & Williams, of Baltimore, Md., and Robert G. Gordon, of Louisville, Ky., on the brief), for Kentucky Electric Power Co.

F. M. Drake, of Louisville, Ky. (Crawford, Middleton, Milner & Seelbach, of Louisville, Ky., on the brief), for Norton Coal Mining Co. et al.

Before · HICKS and ALLEN, Circuit Judges, and FORD, District Judge.

FORD, District Judge.

These appeals grow out of consolidated receivership and mortgage foreclosure actions instituted by creditors against the Norton Coal Mining Company, in which, after the consolidation, the Kentucky Electric Power Company filed an intervening petition asserting the right to an equitable lien or easement upon a portion of the

mortgaged real estate of the Coal Company on account of certain expenditures made by its predecessor, Kentucky Electric Power Corporation, in drilling and equipping an artesian well which, by mistake, was located on the property of the Coal Company.

Prior to this litigation, the Kentucky Electric Power Corporation was reorganized in a proceeding under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, and it is stipulated that the intervening petitioner, Kentucky Electric Power Company, a new corporation, has succeeded to all the rights of the old power corporation with reference to the subject matter of this controversy.

The receivers of the Coal Company dispute the claim of the Power Company to any right whatever in the land of the Coal Company on account of the alleged expenditures or improvements, except the right to remove such of its property as may be taken without damage to the realty. As a further defense, the receivers assert the right to an accounting for the reasonable profit derived by the Power Company and its predecessor from the use of the Coal Company's property and the taking of water therefrom "to whatever extent same may be off-set against the lien claimed herein."

The District Court adjudged to the Power Company the right to remove all property used in connection with the well which is susceptible of removal without damage to the realty, but denied other or additional relief.

Although the District Court found that the Power Company and its predecessor took from the well located on the Coal Company's land four million gallons of water per month for a period of five years from June 1, 1931, upon which the profits realized were in excess of the cost of drilling the well, nevertheless it denied the Receivers any recovery on that account.

No error is assigned to that portion of the decree permitting the Power Company to take its removable property.

The Power Company appeals (appeal No. 7626), assigning error to the action of the District Court in denying the additional relief claimed.

The receivers of the Coal Company and the trustee for its bondholders appeal (appeal No. 7627), assigning error to the failure of the District Court to render judgment in favor of the receivers for the value of the water taken from the well.

Prior to 1926, the Coal Company was engaged in operating a large coal mining enterprise upon its extensive holdings of mineral lands near Nortonville, Kentucky. It then maintained upon its property a reservoir and a small power plant for its own needs. In 1926, on account of the strategic location of its power plant and adequate water supply, the Coal Company undertook the development of a central station for the sale and distribution of water and power in that territory and neighboring communities. With that end in view, it caused the incorporation of the Kentucky Electric Power Corporation, in which it took all the common stock and to which it conveyed its power plant and equipment, together with about seventy acres of land upon which the plant and reservoir were located. In order to finance the project, the Coal Company was instrumental in promoting the sale by the Power Corporation of a large bond issue secured by a mortgage on its property. It also made certain guarantees as to the earnings of the Power Corporation. Although, from the time of the organization of the Power Corporation, the same executive and operating officers served both the Coal Company and the Power Corporation, nevertheless the corporations were at all times engaged in separate and independent enterprises. It is not claimed that the Power Corporation was a mere adjunct or instrumentality of the Coal Company. Like the rest of its customers, the Coal Company was charged monthly water rental for the water service rendered it by the Power Corporation. In the nature of the situation, the relationship of the corporations to each other was intimate, but, so far as shown by the record, in all their transactions with each other, the Coal Company dealt fairly with its subsidiary.

In 1931, the Power Corporation, in order to secure a more abundant supply of water, drilled two artesian wells within a short distance of each other. It appears from the record that water was equally available at both wells, but for some reason pumping equipment was attached to only one of them. The location of both wells was selected by Mr. Sterling S. Lanier, Jr., who was then Vice President of both the Power Corporation and the Coal Company. After the Power Corporation passed through re-organization under

section 77B of the Bankruptcy Act and was succeeded by the present Power Company, and after the Coal Company was placed in receivership, it was discovered that the well to which the Power Company's equipment was attached was located upon the land of the Coal Company.

It is established by the evidence that the location of the well on the land of the Coal Company was a mistake made by Mr. Lanier at a time when he was acting solely in the performance of his duties as Vice President of the Power Corporation, and for its exclusive interest. He intended to locate both wells on the land of the Power Corporation and his mistake was due to inexcusable carelessness in failing to ascertain the location of the boundary line between the property of the two companies, although the title papers clearly describing the boundary line were at all times easily accessible to him. The Coal Company knew nothing of the error, did not participate in the transaction in any way and took no cognizance of it.

Being entirely without claim or color of title to the land of the Coal Company upon which the well was located, the Power Company disclaims reliance upon the general rule under which appropriate equitable relief may be afforded one, who, acting in good faith and under bona fide claim and color of title, makes valuable improvements upon the property of another. It rests its claim to relief in equity entirely upon the theory that the subsidiary relationship of the Power Corporation to the Coal Company was such that "the Coal Company should be held to be a constructive trustee for its subsidiary Power Company to the extent of any benefit to its land resulting from the mistaken location thereon of the well dug with the subsidiary's funds."

The status of corporations similarly allied to each other has been the subject of consideration by this court in numerous cases in which it has been sought to make the holding corporation responsible for the acts of its subsidiary. Shepherd v. Banking & Trust Co., 6 Cir., 79 F.2d 767; Hooper-Mankin Co. v. Matthew Addy Co., 6 Cir., 4 F.2d 187; New York Trust Co. v. Carpenter, 6 Cir., 250 F. 668; Pittsburgh & Buffalo Co. v. Duncan, 6 Cir., 232 F. 584; Kardo Co. v. Adams, 6 Cir., 231 F. 950, 964; Richmond, etc., Co. v. Richmond, etc., Co., 6 Cir., 68 F. 105, 34 L.R.A. 625.

Whenever property, real or personal, has been obtained by a dominant corporation from its controlled subsidiary through the exercise of duress, undue influence or by taking an unfair advantage of the weakness or necessities of the subsidiary in such a way or through such a means as to render it unconscionable for the dominant corporation to retain and enjoy the beneficial interest so acquired, a court of equity will exercise jurisdiction to reach the property in the hands of the dominant corporation and administer complete justice between the parties. Angle v. Chicago, St. Paul, Minnesota & Omaha Ry. Co., 151 U.S. 1, 14 S.Ct. 240, 38 L.Ed. 55. Such relief is in harmony with incontrovertible principles of equity.

On the other hand, it is likewise well settled that a corporation is ordinarily an entity, separate and apart from its stockholders, and mere ownership of all the stock of one corporation by another, and the identity of officers of one with officers of another, are not alone sufficient to create identity of corporate interest between the two companies or to create the relation of principal and agent or to create a representative or fiduciary relationship between the two. If such stock ownership and potential control be resorted to only for the purpose of normally participating in the affairs of the subsidiary corporation in a manner usual to stockholders and not for the purpose of taking some unfair advantage of the subsidiary or using it as a mere adjunct to the main corporation or as a subterfuge to justify wrongdoing, their identity as separate corporations will not be disregarded but their respective rights when dealing with each other in respect to their separate property will be recognized and maintained. The extent of stock ownership and mere potential control of one company over another has never been regarded as the determining factor in the consideration of such cases. Something must be disclosed to indicate the exercise of undue domination or influence resulting in an infringement upon the rights of the subservient corporation for the benefit of the dominant one. Otherwise, the rights of the separate corporations in respect to their corporate property must be governed by the rules applicable in ordinary cases. Pullman's Palace Car Co. v. Missouri Pacific Ry. Co., 115 U.S. 587, 6 S.Ct. 194, 29 L.Ed. 499; Peterson v.

Chicago, Rock Island & Pacific Ry. Co., 205 U.S. 364, 391, 27 S.Ct. 513, 51 L.Ed. 841; United States v. Delaware & Hudson Co., 213 U.S. 366, 413, 29 S.Ct. 527, 53 L.Ed. 836; Interstate Commerce Commission v. Stickney, 215 U.S. 98, 108, 30 S. Ct. 66, 54 L.Ed. 112; United States v. Delaware, Lackawanna & Western R. Co., 238 U.S. 516, 530, 35 S.Ct. 873, 59 L. Ed. 1438.

As a general rule, no right can be initiated by means of a trespass for "the trespasser can acquire no rights by his tortious acts." Searl v. School District, 133 U.S. 553, 562, 10 S.Ct. 374, 377, 33 L.Ed. 740. Another general rule is that "mistake, to be available in equity, must not have arisen from negligence, where the means of knowledge were easily accessible. The party complaining must have exercised at least the degree of diligence 'which may be fairly expected from a reasonable person.'" Grymes v. Sanders, 93 U.S. 55, 61, 23 L.Ed. 798. These rules are applicable to an equitable action for the recovery of the value of improvements made through trespass by mistake on the land of an adjoining owner, unless the mistake is shown to be due to misleading acts or declarations of the adjoining owner. Bennett Jellico Coal Co. v. East Jellico Coal Co., 152 Ky. 838, 154 S.W. 922; Swiss Oil Corp. v. Hupp, 253 Ky. 552, 570, 69 S.W.2d 1037.

The record in this case discloses no misleading acts or declarations on the part of the Coal Company to induce the mistake in the location of the well on its property. There is no showing that the wrongful location of the well was attributable to any ulterior motive on the part of any one. Not the slightest purpose or intention on the part of the Coal Company to take advantage of its subsidiary or to profit at its expense is shown. Neither the mistake made by Mr. Lanier nor his negligence in failing to exercise ordinary care to ascertain the boundary line of the land of the Power Corporation, for which he was acting, can justly be charged or imputed to the Coal Company. We think the District Court properly denied to the Power Company the additional relief sought.

The Power Company stresses the point that the action of the District Court results in permitting an unjust enrichment of the parent corporation at the expense of the subsidiary. This view entirely overlooks the fact found by the District Court that the Power Company and its predecessor, for many years, made profitable use of the water taken from the land of the Coal Company as a commercial commodity and that the profits derived from the sale of the water were amply sufficient to compensate for the expense incurred in drilling the well.

By the loss of the use of the well on the Coal Company's land, the Power Company is not deprived of an essential water supply. The evidence shows that it may remove and attach its pumping equipment to the artesian well located on its own property, with comparatively small expense, and by so doing it may secure substantially the same supply of water which was available from the other well.

As to the appeal by the Coal Company, it is sufficient to say that, as we construe it, the answer of the Coal Company does not assert an independent substantive claim against the Power Company. It merely sets up a defensive claim in the nature of a resisting equity to off-set the lien claimed against its land. The District Court properly denied recovery upon the basis of a substantive claim. It is unnecessary to consider the question whether the claim would have been allowable if it had been otherwise asserted.

The decree of the lower court is affirmed.