## RUBEROID CO. v. NORTH TEXAS CONCRETE CO. et al.

### No. 13462.

United States Court of Appeals
Fifth Circuit.

Dec. 14, 1951.

Norman R. Crozier, Jr., Reuben W. Gray, Dallas, Tex., for appellant.

W. F. Bane, Ralph W. Currie, Dallas, Tex., for appellees.

Before HUTCHESON, Chief Judge, and BORAH, and STRUM, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal in an action in the nature of a creditor's bill and a bill of discovery of assets after judgment brought by appellant, The Ruberoid Co., against the appellees,[1] to ascertain what property, if any, should be applied to the satisfaction of a judgment in the amount of $9,370 obtained by appellant on January 16, 1950, in an action against North Texas Concrete Company, Inc. Execution was duly issued and returned *nulla-bona* as North Texas Concrete had been dissolved on December 29, 1949, at which time all of its remaining assets were sold at book value and all of its creditors were paid in full with the exception of appellant and the three Blacks.[2]

This action was posited on three alternative grounds: The first point urged was that Texas Concrete was merely the *alter ego* of its dominant stockholders and to circumvent fraud the court should ignore the corporate fiction and hold the John R. Black interests[3] personally liable for the judgment. The second point, was that the corporation was insolvent, was liquidating and for all practical purposes had ceased to do business on or before October 29, 1949, when John R. Black loaned the corporation an additional $5,000 and the corporation issued notes to John R. Black and his two children secured by a chattel mortgage upon the physical assets of the company; that the court should set aside the

illegal preference and the appellant was entitled to its pro rata share of the assets as of the time of the preference. The third alternative point was that appellant was entitled to take its pro rata share of the assets as of December 29, 1949, the date of formal dissolution. The court below held in favor of plaintiff on the third point and gave judgment in the amount of $2,919.69. Thereafter Ruberoid perfected this appeal, assigning as error so much of the judgment as disallowed any relief under its first and second points.

As to the first demand, that the corporate fiction should be disregarded and the John R. Black interests should be held personally liable for the debts of North Texas Concrete, we are in no doubt that the appellant has failed to disclose any reason whatever to justify piercing the corporate veil. The doctrine of separate entity fills a useful purpose in business life and the courts are hesitant to disregard it unless the facts presented demonstrate some misuse of the corporate privilege or the need of limiting it in order to do justice. Here, it affirmatively appears that regular corporate procedure was followed throughout, and corporate and individual transactions were kept separate and distinct. All dealings between the John R. Black interests and the corporation appear to have been open, honest, and fair, and the record does not contain the slightest suggestion of fraud or false representation. Far from perverting the separate corporate entity to dishonest uses, the record discloses that the Blacks constantly poured money into the company to keep it afloat and did many other things for its benefit. It is true that the stock was held by a limited number of persons but even one-man corporations are not generally regarded as *per se* invalid. Ballantine on Corporations, § 128. This is the rule in Texas. 10 Tex. Jur., Corporations, § 50.

The second alternative demand is that the assets of the corporation became

1. North Texas Concrete Company, North Texas Building Materials Inc., John R. Black, John R. Black, Jr., Charles H. Hill, Jr., and Joe Vore.

2. John R. Black, John R. Black, Jr., and Miss Peggy Black.

3. John R. Black, John R. Black, Jr., Charles H. Hill, Jr., and Joe Vore.

a trust fund for the benefit of creditors in October when it gave the Blacks a chattel mortgage on assets having a book value of $38,000 to secure an indebtedness of $90,-820.38. Regardless of what the rule may be in other jurisdictions, it is settled Texas law that a corporation has the power to prefer one of its creditors, even though the corporation be insolvent, so long as it is still transacting its business in the usual way. Zorn v. Brooks, 125 Tex. 614, 83 S.W.2d 949, 951. The fact that the creditor is one of the corporation's officers or directors does not work an exception to the rule. Frank Co. v. Berwind, Tex.Civ. App., 47 S.W. 681. Therefore, the question presented by the second demand is whether or not North Texas Concrete had ceased to do business on or before October 29, 1949.

On October 27, 1949, which was only two days prior to the alleged illegal preference, North Texas Concrete entered into a contract to do concrete work at Love Field Municipal Airport in the approximate amount of $20,415.48.[4] On October 29, 1949, John R. Black loaned North Texas Concrete the sum of $5,000 to be used by the company for current indebtedness. During the month of October the total business performed by the company amounted to $22,824.24, and during this month about $10,000 was paid for labor. In November the labor expense totaled $14,836 plus. In December the weather was bad but actual work performed totaled $5,373.15. These facts make it excessively clear that the corporation was actively engaged in business on and after October 29, 1949, and show that the company actually continued doing business until the date of formal dissolution.

The judgment was right and it is Affirmed.

---

4. The following is a list of North Texas Concrete jobs pending between September 1, 1949, and December 30, 1949:

| Contract Date | | Amount | Complete 9-1-49 | Complete 12-30-49 | Completed after 1-1-50 by North Texas Building Materials. |
|---|---|---|---|---|---|
| 8-16-49 | City of Dallas | 28,782.00 | | 28,513.82 | |
| 8-23-49 | City of Dallas | 6,170.50 | | 6,170.50 | |
| 8-30-49 | City of Dallas | 60,954.50 | | 18,821.77 | 42,132.73 |
| 9-27-49 | City of Dallas | 17,293.50 | | | 17,293.50 |
| 10-27-49 | Subcontract from A. J. Rife on work at Love Field Municipal Airport based on unit price only—approximately | 20,415.48 | | 809.80 | 19,605.68 |