Junius **GUILLORY**, Appellant,

v.

**LEVINGSTON SHIPBUILDING COMPANY**, Appellee.

No. 6991.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 19, 1968.

Rehearing Denied Oct. 9, 1968.

Seale & Stover, Jasper, for appellant.

King, Sharfstein & Rienstra, Beaumont, for appellee.

PARKER, Justice.

Junius Guillory sued Levingston Shipbuilding Company for personal injuries he sustained while working aboard the tug "Lou Ann Ellis", a vessel owned by Harms Marine Service. At the time of his injury, the plaintiff was an employee of Levingston. Levingston was a subscriber under the Texas Workmen's Compensation Act, Article 8306 et seq. Texas Revised Civil Statutes, and the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A., Section 901 et seq. The injury occurred while the tug was on a marine railway undergoing repairs. Such marine railway was owned and operated by Levingston. No crew of Harms Marine Service was aboard the tug while being repaired. All persons working on the tug were employees of Levingston. Harms Marine Service was not a party to the suit. The case was tried

to a jury in the District Court of Orange County, Texas, which found for plaintiff Guillory in response to special issues. Levingston moved for judgment non obstante veredicto, and judgment was entered in accordance with such motion. The plaintiff Guillory will be designated as plaintiff or as appellant. The defendant Levingston will be designated as defendant or as appellee.

Construction of the Longshoremen's and Harbor Workers' Compensation Act controls the disposition of this appeal.

United States Code, Title 33, Sections 901 and following, comprise the Longshoremen's and Harbor Workers' Compensation Act. Section 905 of that Act provides:

The liability of an employer prescribed in Section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. * * *

Sections 902(2) and (4) provide:

(2) The term "injury" means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment.

* * * * * *

(4) The term "employer" means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any dry dock).

Section 903, Coverage, is:

(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the dis-
ability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. * * *

In his first seven points of error, appellant contends the trial court erred in granting judgment non obstante veredicto for the defendant, * * *

1. because the plaintiff is not relegated to the exclusive remedy of the Longshoremen's and Harbor Workers' Act, since the employer-defendant was in exclusive control of the vessel on which plaintiff was working when injured, and defendant thereby stood in the stead of the owner and was subject to direct suit by its employee for negligence and/or unseaworthiness.

2. because the plaintiff has no remedy whatsoever under the Workmen's Compensation Act of the State of Texas.

3. because the plaintiff does have a maritime claim against the defendant without regard to whether or not he is a "seaman" or a member of the crew of a vessel.

4. because the vessel on which plaintiff was injured was on the marine way at Levingston for minor repairs, and was not a "dead" vessel, but on the contrary was still "in navigation" under the law.

5. because the plaintiff was performing work traditionally done by seamen at the time of his injury.

6. because there is evidence that the vessel on which plaintiff was working when injured was unseaworthy, and that such unseaworthiness was a proximate cause of his injury.

7. because there is evidence that the defendant was negligent, and that such negligence proximately caused

the plaintiff's injury and his disability.

The Lou Ann Ellis was brought to the Levingston yard on September 6, 1966, for major repairs. The work order is as follows:

HARMS MARINE SERVICE
TUG "LOU ANN ELLIS"
9–9–66
JOB 1462

1. *Drydock:*
Furnish labor & facilities to drydock vessel for underwater examination and repair. Hold on dock for completion of underwater work and undock vessel.

2. *Propellers:*
Furnish labor & equipment to crop propeller nut keepers, remove propeller nuts and unship port & stbd. propellers from vessel to Levingston Shipbuilding Company truck for transportation to L. L. Walker, in Houston. Propellers to be repaired for owners account. Dial indicate port & stbd. propeller shafts and report findings to owners. Pick up propellers in Houston. Drill pull bolt holes. Deliver to vessel and reinstall as original. Harden up propeller nuts & install flat bar keepers.

Weakley
1462

HARMS MARINE SERVICE
TUG "LOU ANN ELLIS"
9–9–66
JOB 1462

3. *Port Rudder:*
Furnish labor & facilities to disconnect port rudder at quadrant. Drop rudder & transfer to machine stop. Crop rudder blade, chuck in lathe and straighten stock. Add approx. 10″ to lower end of rudder stock and weld out. Reinstall rudder blade as original and connect up to quadrant.

4. *Rudder Shoe & Gudgeon:*
Furnish labor and material to crop & renew lower angle on rudder shoe approx. 6 x 3 x 3⁄8 x 5′–0″. Fabricate rudder shoe extension from after strut to rudder. Machine new gudgeon and install on shoe to suit rudder pintle.

5. *Packing Glands:*
Furnish labor & material to repack port & stbd. stern tube packing glands.

Weakley
1462

HARMS MARINE SERVICE
TUG "LOU ANN ELLIS"
9–9–66
JOB 1462

6. *Port & Stbd. Engines:*
Furnish labor & material to align and resecure port & stbd. engines on foundations using fitted bolts.

7. *Gasfree:*
Furnish labor & facilities to pump water from after void. Washdown & gasfree after void & after fuel tank for hot work.

8. *Gasfree Certificate:*
Furnish services of certified chemist to check vessel and issue necessary certificate for required hot work.

9. *Misc. Fractures & Doublers:*
Furnish labor & material to gouge & weld miscellaneous fractures at stern of vessel including struts and install doublers where necessary.

Weakley
1462

HARMS MARINE SERVICE
TUG "LOU ANN ELLIS"
9–9–66
JOB 1462

10. *Blast & Paint:*
Furnish labor & material to sandblast vessel from keel to waterline.

Furnish and apply two (2) coats silver primocon & one (1) coat super tropical #2 antifouling.

Weakley

1462

## HARMS MARINE SERVICE TUG "LOU ANN ELLIS"

9-9-66

JOB 1462

11. *Assist Radar Installation:*
Furnish labor to assist in installation of radar unit as requested.

12. *Zinc Pads On Fernstrom Coolers:*
Furnish labor & material to renew zinc pads on fernstrom coolers as requested by owners representative.

13. *Shaft:*
Furnish labor & equipment to break inboard coupling and unship port propeller shaft. Accept delivery of owners spare shaft and install as original. (Note—Item #5 covers repacking of gland).

Weakley

1462

The tug was hauled out of the water on a marine railway on September 8, 1966. Repairs were completed and the tug was placed back into navigation on September 10, 1966. While on the way, none of the tug's crew was aboard. None of the crew assisted in the repair work. Guillory, at the time of his injury, was an employee of Levingston. The injury was alleged to be the result of inhaling gas fumes without a gas mask being furnished while working aboard the Lou Ann Ellis while it was in dry dock. He was performing work described in paragraph 7 of the work order. It is undisputed that the vessel was in the Levingston yard solely for the purpose of repairs. Levingston had exclusive control of the vessel only for the purpose of repair. It had no right to control the use and operation of the vessel in navigation.

At the time of Guillory's injury, appellee was a subscriber under the Longshoremen's and Harbor Workers' Compensation Act and under the Texas Workmen's Compensation Act. Article 8306, Section 3, Workmen's Compensation Act provides:

The employees of a subscriber and the parents of minor employees shall have no right of action against their employer or against any agent, servant or employee of said employer for damages for personal injuries, and the representatives and beneficiaries of deceased employees shall have no right of action against such subscribing employer or his agent, servant or employee for damages for injuries resulting in death, but such employees and their representatives and beneficiaries shall look for compensation solely to the association as the same is hereinafter provided for. * * *

■ The Federal Act and the State Compensation Act each prescribe an exclusive remedy for injuries suffered by an employee insofar as his employer is concerned. Employees injured on marine railways, which are located on land, may seek benefits under either the State or Federal Compensation Act. In Calbeck v. Travelers Ins. Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed. 2d 368 (1962), in construing the scope of the Longshoremen's and Harbor Workers' Compensation Act, the court's conclusion is thus stated:

* * * Our conclusion is that Congress invoked its constitutional power so as to provide compensation for all injuries sustained by employees on navigable waters whether or not a particular injury might also have been within the constitutional reach of a state workmen's compensation law.

\* \* \* \* \* \*

The issue in Avondale Marine Ways, Inc., v. Henderson, 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77, (1953) was whether compensation was available under the Longshoremen's Act for the death of an employee killed while engaged in the repair of a vessel which was then physically located on land, but on a marine rail-

way. Since a marine railway was considered to be a "dry dock," the injury satisfied § 3(a)'s requirement that it occur "upon * * * navigable waters," defined in § 3 as "including any dry dock." At the same time, since the in-. jury did, in a physical sense, occur on land, there is little doubt that a state compensation act could validly have been applied to it. See State Industrial Commission of State of New York v. Nordenholt Corp., 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933, 25 A.L.R. 1013, 21 NCCA 862. * * *

See Travelers Insurance Company v. Gonzalez, 351 S.W.2d 374 (Tex.Civ.App.1961) error ref. N.R.E.; Travelers Insurance Company v. Shea, 382 F.2d 344 (5th Cir. 1967).

Appellant contends that he is entitled to bring the action as he did, to use his own language:

> This is a personal injury suit brought under the general maritime law of the United States. The suit was filed against Levingston Shipbuilding Company in the District Court of Orange County, Texas, rather than the Federal Court, under the "Savings to Suitors" clause (Title 28, Section 1333, U.S.C.A.). The plaintiff was injured in the course of his employment for the defendant while working aboard a tug which was owned by Harms Marine Service but was under the exclusive control of the defendant at the time of the plaintiff's injury. Although Section 905 of the Longshoremen's and Harbor Workers Act (Title 33, Sections 901–905, U.S.C.A.) provides that an employee's exclusive remedy for an on-the-job injury is under that act, this suit was brought under the express authority of the United States Supreme Court cases of Reed v. S.S. Yaka, 373 U.S. 410 [83 S.Ct. 1349, 10 L.Ed.2d 448], and Jackson v. Lykes Bros. Steamship Co., Inc., 386 U.S. 731 [87 S.Ct. 1419, 18 L.Ed.2d 488]. These cases specifically hold that a longshoreman may sue his employer

when the employer also is the shipowner or bareboat charterer, in spite of Section 905, and it is the plaintiff's theory that when a shipyard is in exclusive control of a vessel while repairing it, this puts the shipyard in the same legal position as if it were the owner or bareboat charterer, and such company therefore becomes responsible to its employees to furnish a seaworthy vessel and to exercise due care for their safety.

In Reed v. S.S. Yaka, a stevedore brought suit in rem against the S.S. Yaka, which was owned by Waterman Steamship Corporation but which was under bareboat charter to Pan-Atlantic Steamship Corporation. The latter was Reed's employer. Reed alleged that he was injured while working aboard the vessel as a result of the unseaworthiness of the ship. The court held that as charterer of the vessel Pan-Atlantic was the owner pro hac vice.

> Under such arrangements full possession and control of the vessel are delivered up to the charterer for a period of time. The ship is then directed by its Master and manned by his crew; it makes his voyages and carries the cargo he chooses. Services performed on board the ship are primarily for his benefit. It has long been recognized in the law of admiralty that for many, if not most purposes the bareboat charterer is to be treated as the owner * * *. 373 U.S. 410, 412, 83 S.Ct. 1349, 1351, 10 L.Ed.2d 448, 451.

Therefore, the court held that this charterer was in the same position as the owner of the vessel, owing a duty to shoreside workers performing the tasks of a seaman, to furnish a seaworthy ship. The charterer of the vessel was, in fact, at that time, the owner of the vessel and was Reed's employer. Under such facts, the court held that Reed was entitled to recover against Pan-Atlantic notwithstanding Section 905 of the Longshoremen's and Harbor Workers' Compensation Act. This followed the decision of Seas Shipping Com-

pany v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). To the same effect is Jackson v. Lykes Bros. Steamship Company, supra.

Under the facts of the instant case, Section 905 of the Longshoremen's and Harbor Workers' Act is pertinent, the liability of the employer being limited to that act, insofar as recovery may be had under Federal remedies.

In the above decisions of the Federal Court, the plaintiff sued legal entities having full possession and control of the vessel, not just possession and control of the vessel for the purpose of repairs.

Appellant contends that the holding in Sanderlin v. Old Dominion Stevedoring Corporation, 385 F.2d 79, at page 82 (4 Cir. 1967) authorizes the bringing of his suit under the general maritime laws of the United States by this language:

> There can be no doubt that the stevedore is the appropriate enterprise within the maritime industry to bear the cost of this accident. Yet respondent argues that the only way it may be held liable in the admiralty courts is for Sanderlin to sue his employer, the shipowner, for the unseaworthiness resulting from improper stevedoring by Old Dominion and then for his employer to seek indemnification from Old Dominion. This strikes us as needless and undesirable circuity.

This Sanderlin suit was based on breach of an expressed warranty in the stevedore contract. The stevedoring concern was servicing the vessel. The court held on page 81:

> Maritime jurisdiction when founded upon contract depends upon the nature and subject matter of the contract. North Pacific S. S. v. Hall Bros. [& Shipbuilding, Marine Railway] Co., 249 U.S. 119, 39 S.Ct. 221, 63 L.Ed. 510 (1919). The contract sued on here provides in pertinent part:

> "It is mutually agreed between SMI and the Stevedore that the Stevedore will load and/or discharge in a safe, proper and workmanlike manner with all possible dispatch cargoes of vessels for which SMI acts as agent in the port named * * *"

Since it is well-settled that a stevedoring contract is maritime in nature and governed by general maritime principles, American Stevedores v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011 (1947), the question in this case is not, as formulated below, whether admiralty has jurisdiction over this action for pierside personal injuries. Rather, given a concededly maritime contract, the issue for determination is whether the substantive laws of admiralty permit a shipowner's employee of this type to recover directly on the contract from a stevedoring company which has expressly warranted a "safe, proper and workmanlike" performance. Had this action sounded in tort, the locale of the injury would have been jurisdictionally dispositive. See, e.g., Hastings v. Mann, 340 F.2d 910 (4th Cir.), cert. denied, 380 U.S. 963, 85 S.Ct. 1106, 14 L.Ed.2d 153 (1965). However, as the Supreme Court has observed, the "action is not changed from one for a breach of contract to tort simply because recovery may turn upon the standard of the performance of [the] stevedoring service." Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 134, 76 S.Ct. 232, 237, 100 L.Ed. 133 (1956). That the injury occurred on the pier is therefore of no relevance here.

Levingston, in accepting the job from Harms, did not expressly warrant a "safe, proper and workmanlike performance" and did not repair the tug while operative in the water.

■ The instant Guillory action is readily distinguishable. Here, Guillory was a shore based worker seeking a maritime remedy. The vessel was not in navigation. The plaintiff was not injured while performing duties aboard a vessel in naviga-

tion. He was not a seaman, for he was not exposed to the traditional perils of the sea. This vessel was temporarily withdrawn from navigation, and seamen no longer had any duties to perform with respect to it. United New York and New Jersey Sandy Hook Pilots Association v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959). Appellant's points of error 6 and 7 are immaterial to this decision and are not considered. Appellant's first five points of error are each overruled.

Judgment of the trial court affirmed.