Joe T. BARRERA

v.

ROSCOE, SNYDER AND PACIFIC
RAILWAY COMPANY.

No. CA 1–559.

United States District Court,
N. D. Texas,
Abilene Division.

Oct. 9, 1973.

Aubrey L. Roberts, Jr., Sweetwater, Tex., for plaintiff.

D. L. Case, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

BREWSTER, District Judge.

The questions now before the Court are raised by post-verdict and pre-judgment motions filed by each of the parties.

The plaintiff brought this action under the Federal Employers' Liability Act (FELA) against the Roscoe, Snyder and Pacific Railway Company (Railroad) to recover damages for personal injuries sustained by him while working as an employee of RSP Railway Equipment Corporation (Equipment Corporation).

The Railroad and the Equipment Corporation were separate corporate entities. During all of its existence, the Railroad had been engaged in the business of a common carrier by railroad, as that term is used in the FELA. The business of the Equipment Corporation has been the repair and major overhaul of railroad cars for common carriers all over the country.

There was no claim that the plaintiff was an employee of the Railroad at the time of his injuries. It was stipulated that at such time he was an employee of the Equipment Corporation actually doing its work. Since the Equipment Corporation was not engaged as a common carrier by railroad, it was eligible to, and did, carry insurance on its employees under the Texas Workmen's Compensation Act. The Railroad, of course, was prohibited from carrying such insurance. With the same lawyer representing him in his workmen's compensation claim as is representing him in this case, the plaintiff filed and prosecuted his claim for such compensation. To do so, he had to assert that he was an employee of the Equipment Corporation. With the competent representation that he had, he was able to make a good settlement of his compensation action for $10,000.00 cash, all medical expenses to the date of the settlement, and future medical expenses for services of a named doctor from the date of the settlement until a specified time in 1973.

Plaintiff sought to overcome the fact that he was not an actual employee of the Railroad on each of the following grounds:

    a.  The Equipment Corporation was an alter ego of the Railroad on the date of plaintiff's injuries.

    b.  One of the purposes of the Railroad in the creation of the Equipment Corporation was to enable the Railroad to exempt itself from liability for damages for personal injuries to its employees under the provisions of the FELA.

The case was tried before a jury, and a verdict in the form of answers to special interrogatories was returned. By such answers, the jury found:

1.  The Equipment Corporation was an alter ego of the Railroad on the date plaintiff sustained his injuries.

2.  The Railroad did not create the Equipment Corporation for the purpose, among others, of enabling the Railroad to exempt itself from liability for damages for personal injuries to its employees under the provisions of the FELA.

3. The plaintiff's employer did not fail to provide him with a reasonably safe place in which to work at the time he was injured.

4. The plaintiff's employer did fail to provide him with reasonably safe equipment with which to work at the time he was injured; and such failure did play some part in bringing about or causing the plaintiff's injuries.

5. The amount of money that would reasonably compensate the plaintiff for his injuries was $5,000.00 for loss of earnings to date of trial and of future earning capacity he would in reasonable probability sustain, together with $2,017.20 to cover his hospital bill, and $1,278.00 for his medical expenses, $645.00 of which was for the services of Dr. Kenneth Scholz and $633.00 for those of Dr. Lloyd M. Garland, all of which damages and expenses totalled $8295.20.

The following motions filed after the return of the verdict are now before the Court:

1. *Plaintiff's motion for judgment on the verdict as to liability of the defendant and for new trial as to damages only.* By this motion, the plaintiff contends that the liability of the Railroad was established by the jury findings, but that the findings on the damage issues should not be allowed to stand. The contention as to the damages is predicated on the fact that the jury allowed no damages for pain and suffering, even though there was no question about the fact that plaintiff sustained some injuries, and the jury found damages of $5,000.00 for loss of earnings and future earning capacity and hospital and medical expenses in the amount of $3,295.20. Plaintiff claims that a new trial can be granted as to the damage issues only, while the findings on liability are left to stand.

2. *Defendant's motion for judgment notwithstanding the verdict.* The grounds of this motion are that: (a) it was conceded that plaintiff was not an employee of the Railroad at the time he was injured; (b) there is no legally competent evidence to support the jury finding that the Equipment Corporation was an alter ego of the Railroad, and (c) plaintiff waived any claim he might have had against the Railroad by successfully prosecuting his workmen's compensation claim on a theory entirely inconsistent with his claim in this case.

3. *Defendant's alternative motion for judgment.* This motion urges that:

(a) If there is sufficient evidence to show that Equipment Corporation was an alter ego of the Railroad, the effect of such finding would be that the two corporations were one and the same.

(b) If they are one and the same, the Railroad is entitled to credit or offset the amount of the settlement of the plaintiff's workmen's compensation claim against his recovery on the verdict.

(c) Since the largest amount ($8,295.20) the plaintiff could possibly recover on the verdict is less than the amount of the compensation settlement ($10,000.00 cash plus medical expenses), the offset would more than cover the amount of damages allowed by the jury.

The Court is of the opinion that the Railroad's motion for judgment notwithstanding the verdict should be granted on the ground that there is no evidence to support the finding of the jury that the Equipment Corporation was an alter ego of the Railroad. In the absence of a valid finding to such effect, there is no way the Railroad could possibly be liable to the plaintiff here. Also, the plaintiff is estopped to recover from the Railroad by having successfully asserted his claim for workmen's compensation from the Equipment Corporation's compensation insurance carrier.

At the conclusion of the evidence, the Railroad filed a motion for instructed verdict on the grounds, among others, (1) there was no evidence, and (2), certainly insufficient evidence, to justify the submission of the alter ego issue to the jury. Even though the Court was of

the opinion that the Railroad's position was correct, it followed the recommended practice of withholding action on the motion for instructed verdict and submitting the case to the jury, so that a remand for a complete new trial would be unnecessary in the event the appellate court should disagree with the ruling on liability. Malone and Hogan Hospital Foundation v. Boston Insurance Company, 5 Cir., 378 F.2d 362 (1967);[1] Reitan v. Travelers Indemnity Co., 7 Cir., 267 F.2d 66 (1959).[2]

The Court has seriously reconsidered this question since the verdict was returned, and has reached the same conclusion that there was no evidence to establish that the Equipment Corporation was the alter ego of the Railroad at the time plaintiff was injured.

The stipulation previously mentioned established that plaintiff was working as an employee of the Equipment Corporation, and not the Railroad, at the time he was hurt. He was not under the direction, supervision or control of the Railroad. He was washing the inside of a railroad tank car with soap and water on the premises of the Equipment Corporation when he lost his footing due to lack of scaffolding and fell into the hopper of the car in such manner as to cause injuries to his back. There was no claim that the Railroad owned the car or that the work was being done for it.[3] The car was in the shop of the Equipment Corporation for repair.

The evidence established as a matter of law that the Equipment Corporation was not the alter ego or an instrumentality of the Railroad at the time plaintiff sustained his injuries. There was no ownership, undue domination or control of either corporation by the other. Regular corporate procedure of each company was followed throughout. Neither one of them owned any stock in the other. No officers or directors of either corporation occupied any official position with the other. The management and operation of each company were in different hands. Most of the business of the Equipment Corporation was with companies other than the Railroad.[4] The Equipment Corporation was not a common carrier by railroad under the FELA. It did not perform any transportation functions, switching operations or any other non-delegable duties of a railroad. It was strictly in the business of repairing and making major alterations on rolling stock of railroads from over the entire country. It carried workmen's compensation insurance on its employees. There was no use by the Railroad of the Equipment

1. "Boston moved for an instructed verdict at the conclusion of the evidence. The court was of the opinion that Boston was entitled to judgment as a matter of law but followed the recommended practice of submitting possible fact issues to the jury so that remand for a new trial might be obviated if on appeal this court found him in error." 378 F. 2d, at 363.

2. ". . . [W]e hold to the view that in most cases in which a motion for a directed verdict is made at the conclusion of all the evidence, it would be better practice for the trial judge to withhold his ruling until after the jury has returned a verdict, and then, if he thinks proper, set aside the verdict as not supported by any substantial evidence and grant the motion pursuant to Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A., thus giving the reviewing court on appeal the opportunity to reinstate the ver-

dict if it disagrees with him . . . .." 267 F.2d, at 68.

3. This would not be determinative as long as the Equipment Corporation was an entity independent from the Railroad. Car repair is not a non-delegable duty of a railroad.

4. The Railroad did not have enough rolling stock to keep the Equipment Corporation busy. While this 31 mile railroad has always made money, it came primarily from an extremely advantageous settlement it had made with the Santa Fe in consideration of its dropping a contest of Santa Fe's application to the Interstate Commerce Commission for a certain route between Snyder and Sweetwater. The Railroad never did own much rolling stock. There was a time in recent years when it owned only two locomotives and cabooses and one box car.

Corporation as a *subterfuge or for the* perpetration of a fraud.[5]

■ Under the circumstances, the Railroad was entitled to a judgment as a matter of law. Ruberiod Co. v. North Texas Concrete Co., 5 Cir., 193 F.2d 121 (1951); Fawcett v. Missouri Pacific R. Co., D.C.W.D.La., 242 F.Supp. 675, 678, affirmed, 5 Cir., 347 F.2d 233 (1965); Markow v. Alcock, 5 Cir., 356 F.2d 194 (1966); Garrett v. Southern Ry. Co., 6 Cir., 278 F.2d 424 (1960), cert. den., 364 U.S. 833, 81 S.Ct. 49, 5 L.Ed.2d 59; Steven v. Roscoe Turner Aeronautical Corp., 7 Cir., 324 F.2d 157 (1963); Whayne v. Transportation Management Service, Inc., E.D.Pa., 252 F.Supp. 573, affirmed, 3 Cir., 397 F.2d 287 (1968), cert. den., 393 U.S. 978, 89 S.Ct. 445, 21 L.Ed.2d 438, and Taylor v. Standard Gas and Electric Co., 10 Cir., 96 F.2d 693, 704 (1938).

The Fifth Circuit case, Fawcett v. Missouri Pacific R. Co., is directly in point. That was a case brought under the FELA to recover damages for the accidental death of Floyd Fawcett. It was admitted that even though the accident resulting in his death occurred on the premises of the railroad, he was at the time an employee of Missouri Pacific Truck Lines, Inc., a wholly owned subsidiary of the railroad. The following is quoted from the opinion of the District Court:

"At the time of his death (1) Fawcett was not hired by the railroad; (2) he was not on the railroad payroll; (3) he was not, in fact, paid by the railroad; (4) he was not subject to discharge by the railroad; (5) he was upon the railroad premises, but these premises were the subject of a lease agreement between the railroad and Fawcett's employer; (6) he was not using the railroad's tools; (7) the railroad furnished no material; (8)

he was not doing work the railroad was required to do. His work consisted of loading and unloading which the consignee would otherwise do, in assisting in the transport of freight by highway transport for which the railroad was not licensed to do; (9) none of the railroad's employees were present at the time Fawcett met his death; and (10) none of the railroad employees had any supervision of Fawcett or his supervisors." 242 F. Supp., at 677.

In discussing the question of whether there was any evidence to support the alter ego theory of liability, the Court said:

"As we analyze it, plaintiff's real contention is that because the trucking company is a wholly owned subsidiary of the defendant, it, the trucking company was the alter ego, adjunct, subsidiary agent, and instrumentality of the railroad. The jurisprudence as we read it is to the contrary. Atlantic Coastline R. R. Co. v. Shields, 5th Cir., 1955, 220 F.2d 242; Garrett v. Southern R. R. Co., 6th Cir., 1960, 278 F.2d 424; Kentucky Electric Power Co. v. Norton Coal Mining Co., 6th Cir., 1938, 93 F.2d 923; Taylor v. Standard Gas & Electric Co., 10th Cir., 1938, 96 F.2d 693. In a carefully considered opinion in the Kentucky Electric Power case, the Sixth Circuit stated:

" 'Upon the issue of whether or not the control by Southern of Lenoir was of such character as to constitute the latter a mere adjunct of the former, the court held that no such control was evident. The following cases were cited: Kentucky Electric Power Co. v. Norton Coal Mining Co., 6 Cir., 93 F.2d 923; Atlantic Coast Line v. Shields, 5 Cir., 220 F. 2d 242, 246; Taylor v. Standard

---

5. If there was an issue of fact as to fraud and subterfuge, it was settled in favor of the Railroad by the finding of the jury in answer to Interrogatory No. 2 that the Railroad did not create the Equipment Corporation for the purpose, among others, of enabling the Railroad to exempt itself from liability under the FELA for damages for personal injuries to its employees.

Gas & Electric Co., 10 Cir., 96 F.2d 693. " 'In Kentucky Electric Power Company v. Norton Coal Company, supra, 93 F.2d at page 926, this court said: "On the other hand, it is likewise settled that a corporation is ordinarily an entity, separate and apart from its stockholders, and mere ownership of all the stock of one corporation by another, and the identity of officers of one with officers of another, are not alone sufficient to create identity of corporate interest between the two companies or to create the relation of principal and agent or to create a representative or fiduciary relationship between the two. If such stock ownership and potential control be resorted to only for the purpose of normally participating in the affairs of the subsidiary corporation in a manner usual to stockholders and not for the purpose of taking some unfair advantage of the subsidiary or using it as a mere adjunct to the main corporation or as a subterfuge to justify wrongdoing, their identity as separate corporations will not be disregarded but their respective rights when dealing with each other in respect to their separate property will be recognized and maintained. The extent of stock ownership and mere potential control of one company over another has never been regarded as the determining factor in the consideration of such cases. Something must be disclosed to indicate the exercise of undue domination or influence resulting in an infringement upon the rights of the subservient corporation for the benefit of the dominant one. Otherwise, the rights of the separate corporations in respect to their corporate property must be governed by the rules applicable in ordinary cases.'

"We think this is a correct statement of the law. We adopt it. Plaintiff has alerted us to avoid intercompany arrangements drawn to avoid federal jurisdiction under the FELA. We find nothing here indicative of such a purpose, but we point out as did the Third Circuit (Shaw v. Monessen Southwestern R. R. Co., 220 F.2d 841) that we should also be alert to avoid the extension of a statute applicable to railroad employees in interstate transportation to cover those engaged in other occupations. Such an extension might well deprive a widow and children, as it would here, of their rights under a state compensation act where their right of recovery would not depend upon proof of negligence." 242 F.Supp., pp. 677–678.

In upholding the conclusion of the trial court that as a matter of law the truck line was not an alter ego of the railroad, the Court of Appeals said:

". . . After careful consideration, we find ourselves in agreement with the opinion, findings, and conclusions of the district court. . . ." 347 F.2d, at 233.

In the Garrett case, the plaintiff was a wheel moulder in the employ of Lenoir Car Works, a Tennessee corporation. He brought the action under the FELA against the Southern Railway Co. for damages on account of silicosis alleged to have been contracted from inhalation of silica dust which he claimed permeated the foundry of the Lenoir Car Works where he was employed. His theory was that the car works was the "alter ego, adjunct, subsidiary, agent or instrumentality" of the railroad, and that the railroad exercised such control over the car works as to require a determination that the railroad was his employer within the meaning of the FELA. The Court of Appeals sustained the holding of the trial court that the evidence failed as a matter of law to sustain plaintiff's theory. That was in spite of the fact that the railroad owned the entire capital stock of the car works. It was noted that:

(1) The railroad did not dictate the management of the car works.

(2) A substantial part of the business of the car works was with companies other than the railroad.

(3) The car works owned no rolling stock, and was not a common carrier by railroad within the contemplation of the FELA.

(4) The car works performed no switching or transportation functions, or any other non-delegable duties of a railroad. "It was distinctively a manufacturer, performing no common carrier operations."[6]

Based upon such considerations, it was held that the trial court was fully justified in determining that "the facts did not reveal such intimacy and inseparability of control as would lead to the conclusion that the Southern Railway Company and Lenoir Car Works were one and the same." (278 F.2d, at 425).

The facts in the Fawcett and Garrett cases were much stronger in favor of the plaintiff on this issue than they are in the present case. In each of those cases, the plaintiff's corporate employer was a wholly owned subsidiary of the defendant railroad; whereas, as has already been pointed out, the Railroad here owned no stock whatever in the Equipment Corporation.

██ While the federal courts are alert to protect railroad employees from attempts to defeat their rights under the FELA, the cases above cited show that they will not arbitrarily disregard the separate entity of corporations. The Court of Appeals said in the Ruberiod case, supra:

"  .  .  .  .  The doctrine of separate entity fills a useful purpose in business life and the courts are hesitant to disregard it unless the facts presented demonstrate some misuse of the corporate privilege or the need of limiting it in order to do justice.  .  .  . " 193 F.2d, at 122.

This case is distinguishable on the following grounds from the authorities relied upon by the plaintiff:

(1) This is not an action where there was an issue of fact as to whether the plaintiff was in truth an employee of the railroad, rather than of a third party, at the time he was injured, as was the case in Baker v. Texas & Pacific Ry. Co., 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed. 2d 756 (1958); and in Ward v. Atlantic Coast Line R. Co., 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820 (1960). As has already been previously mentioned, it was stipulated that the plaintiff was the employee of the Equipment Corporation, rather than the Railroad, at the time he was injured.

(2) This is not a case where an employee of a railroad was injured as a result of the negligence of a third party performing non-delegable operational activities for the railroad under contract with it, as occurred in Sinkler v. Missouri Pac. R. Co., 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958). The plaintiff here was not an employee of the Railroad, and there was no claim that he was involved in or connected with any kind of activity, operational or otherwise, the Equipment Corporation was doing for the Railroad at the time in question.

After the Court reached the definite conclusion that the Railroad was entitled to a judgment as a matter of law on the basis of the proof presented on the trial, it took considerable additional time to research matters of which it might take judicial notice to determine if anything was overlooked in the production of the evidence here that would indicate the existence of any device at the time of plaintiff's injuries which had the purpose or intent to enable the Railroad to exempt itself from liability to its employees under the FELA in violation of 45 U.S.C., Sec. 55.[7] This was done in

---

6. The quotation is from 278 F.2d, at 425.

7. 45 U.S.C.A., Sec. 55 provides in pertinent part: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of

which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void .  .  .."

spite of the fact that there was no motion or suggestion that the Court judicially notice anything not proved in this case.[8] The matters studied in connection with judicial notice were the records of the Court in prior[9] cases involving the question of whether this same railroad was attempting to devise a scheme to exempt itself from liability to its employees under the FELA; salient facts of local history which are matters of general knowledge;[10] and prominent geographical features in the judicial district over which it has jurisdiction.[11]

The Court made the research even though it was under the impression that it might not be able to consider such judicially noticed facts in determining the judgment to be entered, because the absence of a motion or suggestion that judicial notice be taken made it impossible to get those facts in the record. However, federal courts have consistently supported the humanitarian purposes of the FELA; and the Court had in mind that it would have the discretion to grant a new trial if it should conclude that an injustice was done by reason of the actual existence of a device intended to exempt the Railroad from its responsibilities under the FELA.

The Court found no facts of which it could take judicial notice which would indicate that the situation as to the question under discussion at time of plaintiff's injuries was any different from that presented by the evidence on the trial. The conclusion on the alter ego issue above stated, based entirely upon the evidence, will therefore stand.

■ A second reason why the Railroad is entitled to a judgment as a matter of law is that the plaintiff is estopped to assert a claim against the Railroad under the FELA by reason of his having successfully prosecuted a claim under the Texas Workmen's Compensation Act on account of the injuries involved in this case. That remedy was inconsistent with a claim under the FELA because he had to be an employee of the Equipment Corporation to collect workmen's compensation benefits. South Buffalo Ry. Co. v. Ahern, 344 U. S. 367, 372, 73 S.Ct. 340, 97 L.Ed. 395 (1953); Heagney v. Brooklyn Eastern District Terminal, 2 Cir., 190 F.2d 976 (1951); Mooney v. Stainless, Inc., 6 Cir., 338 F.2d 127 (1964); Lindsey v. T. & N. O. R. Co., Tex.Civ.App., 87 S.W.2d 864, no writ history; Guillory v. Livingston Ship Building Co., Tex.Civ.App., 433 S.W.2d 515, err. ref. n. r. e., cert. den., 395 U.S. 909, 89 S.Ct. 1751, 23 L. Ed.2d 221; International Shoe Company v. Marcus, Inc., Tex.Civ.App., 410 S.W. 2d 235, err. ref. n. r. e.

■■ The plaintiff argues that the Texas Workmen's Compensation Act permits a suit for damages for personal injuries by an injured workman against a third party tort-feasor after he has collected benefits under the Act for his injuries. An injured workman does have a right to collect his workmen's compensation and then sue a third party tort-feasor in a common law action for damages, subject to the subrogation rights of his employer's compensation carrier. Traders & General Ins. Co. v. West Texas Utilities Co., Tex.Com.App., 140 Tex. 57, 165 S.W.2d 713; Independent Eastern Torpedo Co. v. Herrington, Tex.Com.App., 95 S.W.2d 377.[12] However, the Railroad in this case was not a

8. Ginsberg v. Thomas, 10 Cir., 170 F.2d 1 (1948).

9. Ginsberg v. Thomas, supra, note 8; Fletcher v. Evening Star Newspaper Co., 77 U.S. App.D.C. 99, 133 F.2d 395 (1942); Howard v. St. Louis-San Francisco Ry. Co., 8 Cir., 361 F.2d 905 (1966), cert. den., 385 U.S. 986, 87 S.Ct. 598, 17 L.Ed.2d 448.

10. Long v. City of Wichita Falls, 142 Tex. 202, 176 S.W.2d 936; Lewis v. San Antonio River Authority, Tex.Civ.App., 343 S.W.2d 475, affirmed Tex., 363 S.W.2d 444; Fitzgerald v. Boyles, Tex.Civ.App., 66 S.W.2d 347, writ dis.

11. Barber v. Intercoast Jobbers & Brokers, Tex.S.Ct., 417 S.W.2d 154; Terminal R. Asso. of St. Louis v. Kimbrel, 8 Cir., 105 F. 2d 262; 600 California Corp. v. Harjean, D.C.N.D.Tex., 284 F.Supp. 843.

12. The opinions in each of the cases cited were adopted by the Texas Supreme Court, thereby making them opinions of that Court.

third-party tort feasor. There is no claim that it was guilty of any act or omission that contributed in any way to cause plaintiff's injuries. The plaintiff's theory in this case is that it was the negligence of his employer, the Equipment Corporation, which caused his injuries. The Workmen's Compensation Act provides the exclusive remedy for an employee covered thereby where his injuries are caused only by the negligence of his employer.[13] Lotspeich v. Chance Vought Aircraft, Tex.Civ.App., 369 S.W.2d 705, err. ref. n. r. e.

The Court is of the opinion that the plaintiff's motion for judgment on the verdict on the issue of liability should be overruled, and that the defendant's motion for judgment notwithstanding the verdict should be granted. It is accordingly so ordered. Such rulings make action on the other motions unnecessary.

A judgment will be entered for the defendant in accordance herewith.

13. The only exception to this rule is where the injuries result in death and are caused by gross negligence of the employer.