SEABROOK LAND COMPANY, Appellant,

v.

W. E. LIPSCOMB et ux., Appellees.

No. 13524.

Court of Civil Appeals of Texas.

Houston.

Jan. 14, 1960.

Rehearing Denied Feb. 4, 1960.

Fountain, Cox, Gaines & Fox, Joyce Cox, Frank G. Evans, III, Houston, for appellant.

Hamblen, Bobbitt & Hamblen, W. P. Hamblen, Jr., Kennerly, Lesher & Eresch, A. C. Lesher, Jr., Elliot W. Jones, Houston, for appellees.

WERLEIN, Justice.

This suit was brought by appellees, the owners of Lots 3 and 4, Block 169, in Seabrook, Texas, to enjoin appellant's construction and maintenance of a pier which they alleged appellant threatened to erect and did begin to erect in the waters of Clear Creek, and which, if erected, would interfere with their riparian rights.

The Trial Court granted a temporary injunction as to the area or waters adjacent to Lot 4, but denied the injunction as to Lot 3. Appellant has appealed only from the order granting the injunction as to Lot 4. Appellees have not appealed from the order denying the injunction as to Lot 3.

The town of Seabrook was first subdivided in 1895 by Seabrook Town, Lot & Improvement Company. The area between the lots and blocks of the townsite and the waters of Clear Creek, a navigable stream, and of Galveston Bay, was designated as "reservation." A second plat or resubdivi-

sion of Seabrook was filed in February of 1903 in which the "reservation" is designated "Company's Reservation." Thereafter, all sales of lots including Lots 3 and 4 in Block 169, owned by appellees, referred to the second plat for description. Appellees rely on such plats to identify their lots. It is stated in the resubdivision: "The said Co. also reserves to its self and exclusive use and rights to that portion of the land marked on this plat as Company's Reservation." Appellant asserts that the disputed area is that part of the Seabrook Land Company's "Reservation" which lies between the south line of said lots and Clear Creek, as shown in the 1903 plat.

Appellant first complains that the Court erred in refusing to hold that appellees failed to prove prima facie riparian ownership and erred in holding that appellees had only the burden of proving that the waters of Clear Creek touched upon their lots at the time suit was filed without proving whether such physical situation was the result of natural or artificial causes. It asserts that there has been no substantial change in the shore line within the past 60 years except where it has been filled or excavated and that the earliest indication of any change is reflected by Atkinson's Map of October, 1953. It also contends that the evidence is undisputed that any changes in the shore line were made by man and that there is no evidence that there has been any change in the borderline adjacent to that part of the reservation south of Block 169 as the result of gradual erosion or other natural causes.

The title to the property is not in issue. Appellees are admittedly the owners of Lots 3 and 4, and have disclaimed any and all right, title and interest in and to the property designated on said maps as "Company's Reservation" except such riparian rights as they may have as owners of said Lots and any incorporeal rights which they have in dedicated streets as shown on said maps. They assert that

the land known as "Company's Reservation" south of Lots 3 and 4 is submerged land, and that it has been lost to the sea.

The Trial Court concluded that appellees were not estopped to assert riparian rights with respect to their lots by reason of their reliance upon said maps for title and location of such lots, that appellees had the burden of proving that Lot 4 abutted on the waters of Clear Creek at the time this suit was filed, and that the status quo as between the parties was the physical situation which existed at such time.

■ In determining whether the Trial Court erred in granting the temporary injunction as to Lot 4, the sole question is whether the Court abused its discretion. 24-A Tex.Jur. 382, Injunctions, § 265; Southwestern Associated Tel. Co. v. City of Dalhart, Tex.Civ.App., 254 S.W.2d 819, error ref., n. r. e.; Scott v. Graham, Tex. Civ.App., 283 S.W.2d 443, affirmed 156 Tex. 97, 292 S.W.2d 324.

The Trial Court had the duty to maintain the status quo as distinguished from the adjudication of the merits of the case upon a final hearing for permanent injunction. In Gill v. Hudspeth County Conservation & Reclamation Dist. No. 1, Tex.Civ. App., 88 S.W.2d 517, 519, it was stated:

"The status quo, as the term is used in injunction suits, means 'the last actual, peaceable, noncontested status of the parties to the controversy, which preceded the pending suit, and which should be preserved until a final decree can be entered.' City of Farmersville v. Texas-Louisiana Power Co., Tex.Civ.App., 33 S.W.2d [271] 272, 275."

In the Gill case the Court stated with respect to the discretion to be exercised by the trial court:

"Such discretion exists where the temporary injunction serves to maintain the status quo until final trial, in which case such discretion should be exercised in favor of the writ."

It is, therefore, necessary for us to determine what the status quo was at the time this suit was filed, and whether the temporary injunction granted serves to maintain it. Prior to the filing of the suit appellant on July 1, 1959 notified appellees that it intended to take immediate possession of its property and it thereupon contracted for the construction of a pier across the submerged reservation parallel to the south line of Block 169. Appellees filed this suit on July 9, 1959. On July 10 appellant was served with notice to show cause why an injunction should not be granted. On the same day appellant began construction of the bulkhead complained of and, by nightfall, had constructed about 100 feet thereof eastward from the west end of Block 169, but had not at that time erected any construction in front of appellees' lots. On July 14, four days after service of process, appellant again began construction of the bulkhead. The construction, which was finished on July 19, one day before the Trial Court heard this cause, interferes with riparian rights claimed by appellees and access to the water directly south of said lots.

Appellees contend that they have riparian rights because the shore line of Clear Creek abuts, borders and defines the south side of their lots. They cite Richter v. Granite Mfg. Co., 107 Tex. 58, 174 S.W. 284, 285, L.R.A.1916A, 504, in which it is stated: "Riparian rights subsist only for riparian owners, and those who do not own riparian land cannot claim them."

There is evidence that at the time this suit was filed there was no "Company's Reservation" fast land between Lot 4 and the waters of Clear Creek. Maps introduced in evidence indicate that such land was submerged and in effect lost to the sea, at such time and for some time prior thereto. Plaintiffs' Exhibit No. 2 also shows that part of the southern portion of Lot 4 is under water.

Appellant contends, however, that appellees failed to show that the condition existing at the time of the law suit and for some time before was not caused by man rather than by erosion. The testimony is in dispute as to just what did cause the condition that existed at the time and before the filing of the suit. Appellant's witness, A. C. Kuhlmann, testified that he did not know whether there had been any digging south of appellees' lots. He further testified there could have been a little washout just south of such lots. There was testimony that a slip had been dug east of Lot 4 (Lot 4 adjoining and lying east of Lot 3), but not on Lot 4. Such slip had been excavated after 1941 by an owner of another lot to a point some 20 or 30 feet from the water line. Sometime prior to 1941 this witness measured the east line of Lot 4 and concluded the lot did not go to the water.

Witness E. W. Platzer, a resident of the area for some 74 years, testified that for the past 60 years the shore line had been about the same. He further testified that eliminating where a man may have dug in or filled out, the shore line had changed hardly any during the 60-year period. This testimony is subject to the possible interpretation that the shore line of Lot 4 had hardly changed in 60 years if no excavation had taken place on Lot 4 when the slip was dug east thereof as indicated by Mr. Kuhlmann.

Mr. Atkinson, who surveyed the property in 1953, testified that such survey reflected that at that time the south line of Lot 4 had a frontage of about 16 feet on Clear Creek and the east line thereof a frontage of about 45 feet on Clear Creek, and that in front of that portion of Lot 4 there was no Company reservation as it was covered with water. He also testified in substance that he did not know how certain indentations in the reservation adjacent to Block 169 were made; that some could have washed; that he was pretty sure the one lying immediately east of Lot 4 had been dug; that Dr. Lipscomb had done some digging since 1953 over on the east side of Lot 4 where he keeps his boat; that he

didn't think there was anything other than the natural shore line down on the south line of Lot 4 and the east line of Lot 4 in 1953, and that Dr. Lipscomb did some digging on Lot 4 and not on anybody else's land.

Mr. Breaker, a witness for appellant, testified that there had been some dredging in the channel in 1950 and several times since; and that as the channel was deepened the shore line tended to slough off into deep water; that the shore line which was straight in 1949 had been receding since then and before then, and that it had changed since 1949 and is now farther in because of "those indentations and other things." He also testified that Timmons dug east of Lot 4 in about 1954 or 1956 and appellee Lipscomb had a party dig out a part of Lot 4 in 1958.

Mr. Taub, one of appellant's officers, testified that he had observed the land for 25 or 30 years and that the 'diminution in the area had been caused by acts of man and the forces of nature; the running of boats through the channel; and that hurricanes have also eaten away the land; that the only slips that had been dug in Block 169 were the ones dug by Timmons lying east of Lot 4 and the one west of Lots 3 and 4, and that the rest of the shore line along the south of the peninsula [which would include Block 169] is the natural shore except where it may be bulkheaded and built out, and that the shore line prior to those slips meandered but if you took the average it was generally a straight line.

We have not undertaken to set out all of the testimony or to determine which way the testimony may preponderate, nor to decide the law question of whether erosion and submergence of land that has been aided or contributed to by the acts of man, will result in the loss of such land to the owner and riparian rights incident thereto. As stated hereinabove, appellees are not claiming title to the submerged land. They claim only riparian rights incident to the ownership of their lots, which

have in fact become riparian. Appellant apparently does not contend that appellees would not be entitled to riparian rights if the submergence of the reserved land had resulted solely from gradual erosion unaided by the acts of man, provided appellees are not for other reasons hereinafter referred to prevented from asserting such rights. While the existing condition was likely caused by a combination of natural forces and the acts of man, as testified by Mr. Taub, we think there is some evidence, though quite meager, of erosion occurring over a long period of time and even before the slips were cut and the dredging occurred, or at least testimony upon which such conclusion might be based. There is evidence that at the time this suit was filed the land formerly comprising the "Company's Reservation" south of Lot 4 was completely submerged and no longer fast land. There is nothing in the record to indicate that such condition is not permanent. 44 Tex.Jur., p. 100, § 78.

Appellant cites, among other cases, Fisher v. Barber, Tex.Civ.App., Beaumont, 21 S.W.2d 569, in which the plaintiff in trespass to try title recovered title to the land in question and a permanent injunction enjoining defendant from hunting and fishing thereon. In that case a channel was dug which made land not theretofore navigable subject to the ebb and flow of the tide and navigable in fact.

We think the Fisher case is distinguishable from the instant case in which the submergence of appellant's reservation was undoubtedly due, at least in part, to erosion. Our Supreme Court held in Manry v. Robison, 122 Tex. 213, 56 S.W.2d 438, that when a river by erosion occupies land previously unoccupied by it, the owners lose title to such land. This is true notwithstanding the rapidity and suddenness of changes in the channel. Hancock v. Moore, 135 Tex. 619, 146 S.W.2d 369. The law is well established that in the tidewater sections of navigable streams, the sovereignty is the proprietor and owner of the land be-

neath the water. We are not called upon in this case, however, to determine whether the submerged land in question belongs now to the State in trust for the public.

■ We have concluded that under the conflicting testimony adduced on the hearing for temporary injunction with respect to erosion and submergence, we cannot say that the Trial Court abused its discretion in granting as to Lot 4 the temporary injunction which maintains the status quo.

■ By its Point 3, appellant contends that the Trial Court erred in refusing to hold that appellees were estopped to claim riparian ownership in the land in dispute by reason of their ownership under and reliance upon the recorded maps of the Seabrook townsite which expressly reserved said property to the appellant. It is stipulated by counsel that appellees deraigned title to their lots by regular conveyances from and under appellant by deeds which refer for description of their lots to the subdivision plat filed in 1903. Appellant relies largely upon the case of Gibson v. Carroll, Tex.Civ.App., San Antonio 1950, 180 S.W. 630, no writ history. We think that case is factually distinguishable from the instant case in that the map referred to in the deed under which the plaintiff claimed contained an express reservation of all accretions and alluvium in front of the water lots. Moreover, the area involved, as distinguished from the area designated "Company's Reservation" in this case, was a platted designated street set apart to the public and equivalent to a conveyance of an easement that was irrevocable. Although such street was shown on the plat to be above water, as the plat in this case shows appellant's reservation, it was actually submerged at the time platted. The court concluded that such plat clearly showed an intention not to convey riparian rights in the deed under which plaintiff claimed. In the present case, we cannot say it was clearly intended that the lots in question should not become riparian in the event of the sub-

mergence of the Company reservation at some subsequent date.

We find it unnecessary to decide on this hearing for temporary injunction whether riparian rights may be severed from riparian land by the owner thereof and sold or reserved by the owner, as the case may be, as held in Gibson v. Carroll, supra. See also Richter v. Granite Mfg. Co., 107 Tex. 58, 174 S.W. 284, L.R.A.1916A, 504, in which it is indicated that riparian rights may not be separated from riparian land. We are not at this time, however, called upon to determine with finality the rights of the parties to this suit. As stated in James v. E. Weinstein & Sons, Tex.Com.App., 12 S.W.2d 959, 960:

"The law is well settled in this state that the purpose of the issuance of a temporary injunction is to maintain the status quo in regard to the matter in controversy, and not to determine the respective rights of the parties under the cause of action asserted or defenses urged."

■ We think that under the facts of this case, the Court did not err in holding that the status quo between the parties was the physical situation which existed at the time of the filing of this suit. Appellees proved that Lot 4 abutted on the waters of Clear Creek at such time. There was some evidence supporting the contention that such condition had existed undisturbed and peaceably for some time prior to the filing of this suit. The holding in Lorino v. Crawford Packing Co., 1943, 142 Tex. 51, 175 S.W.2d 410, that a tenant cannot dispute his landlord's title, is inapplicable to the facts in this case. Appellees are not claiming title to the submerged reservation. Furthermore, the lease which appellees executed specifically covers that part of the Company reservation lying south of Lot 3 but not any part thereof lying south of Lot 4. We find nothing in the contractual relations of the parties preventing the status quo from being the physical situation existing at the time suit was filed.

■ Appellant next complains of the court's hearing of the prayer for temporary relief on an amended application. It is true that appellees' original application failed to request that temporary relief be granted at the hearing to show cause. However, several days prior to such hearing appellees delivered an amended application praying for temporary relief. Appellant appeared and presented its defense. Rule 681, Texas Rules of Civil Procedure, provides: "No temporary injunction shall be issued without notice to the adverse party." The rule does not prescribe the type of notice required. Appellant had notice of the hearing for temporary injunction prior to the show cause hearing, and filed an answer, thereby making its appearance. James v. E. Weinstein & Sons, supra; City of Ft. Worth v. Ft. Worth Acid Works Co., Tex.Com.App., 259 S.W. 919.

■ We do not think the Court erred in overruling appellant's plea in abatement which asserted that at the time the present suit was filed and heard, Cause No. 495,-165–A, styled Don Mixon et al. vs. Seabrook Land Co., was pending in another district court of Harris County, and that identical issues and parties were involved in both suits. We do not find the matters alleged in the plea in abatement supported by the record in this case. Defendant's Exhibit No. 5 appears to be an amendment to a supplemental petition filed in the case of E. B. Ware et al. vs. Seabrook Land Co. et al., No. 495,165. We have been unable to find in the record any pleading in the case of Don Mixon vs. Seabrook Land Co., No. 495,165–A. Even if appellees were parties to such suit and the same was pending and covered substantially the same matters covered in the present suit, we think that appellees would have the right to elect which suit they would prosecute. Since they elected to prosecute the present suit, the Court properly refused to abate the same. City of Dallas v. McElroy, Tex.Civ.App., 254 S.W. 599, dism., w. o. j.

■ Appellant also complains that the Trial Court erred in granting the temporary injunction because appellees failed to either plead or prove, as against appellant's special exceptions, the probability of irreparable injury, and that their remedy at law was inadequate. The record shows that appellant did not file any special exceptions to the pleading of appellees and that the Court was not called upon to rule on any special exceptions. It is true the appellant filed a motion to strike and the same was overruled. We think the appellant waived its objections to appellees' pleading by not filing special exceptions and requesting the Court to require appellees to plead more fully. Fine v. Pratt, Tex.Civ. App., 150 S.W.2d 308. Furthermore, while appellees did not plead in so many words that they would suffer irreparable injury and had no adequate remedy at law, the allegations of the petition probably sufficiently alleged such facts. See Gonzalez v. Sociedad Mutualista Protectora Benito Juarez, Tex.Civ.App., 211 S.W.2d 245.

■ It was not necessary for appellees to allege a cause of action in trespass to try title, since they were not suing for the title to any of the property in question. In King v. Schaff, Tex.Civ.App., 204 S.W. 1039, 1042, the court stated: "Injunction is a proper remedy to a riparian owner whose rights as such have been unlawfully invaded or interfered with."

■ By a cross-point of error, appellees assert that the Trial Court erred in refusing to grant a temporary injunction as to Lot 3 in Block 169. Appellees did not appeal from the judgment of the Trial Court. The appeal of appellant is limited to the judgment adverse to it and to the assignments of error hereinabove discussed. The portion of the judgment complained of by appellant is entirely distinct and severable from the portion of the judgment complained of by appellees in their cross-point. We are of the opinion that since appellees have not appealed from the judgment in respect to the Court's failure to grant an injunction as to Lot 3 as asserted in their cross-point, this Court is without jurisdic-

tion to consider the same. Milliken v. Coker, Tex.Com.App., 132 Tex. 23, 115 S.W.2d 620; Barnsdall Oil Co. v. Hubbard, 130 Tex. 476, 109 S.W.2d 960; Soper v. Medford, Tex.Civ.App., 258 S.W.2d 118, no writ history; Connell Construction Co. v. Phil Dor Plaza Corp., Tex., 310 S.W.2d 311.

We are of the opinion that the Trial Court did not abuse its discretion in granting the temporary injunction. Appellees' pleadings and evidence present a case of probable right and probable injury. In such case the Trial Court is clothed with broad discretion in determining whether to issue the writ and its order will be reversed only on a showing of clear abuse of discretion. Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549.

Appellant's points of error are overruled, and the judgment of the Trial Court is affirmed.