

# The Attorney General of Texas

November 14, 1977

JOHN L. HILL
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4814 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity
Affirmative Action Employer

Honorable Henry Burkett
Executive Director
Texas Parks and Wildlife
  Department
Austin, Texas   78744

Opinion No. H- 1090

Re:  Lease of waters by
city to private individ-
uals for shrimp maricul-
ture purposes.

Dear Mr. Burkett:

Your office has requested our opinion concerning
several general questions involving the jurisdiction of
the Parks and Wildlife Department regarding fish in waters
over privately owned beds and the legality of a grant of
exclusive rights of fishery.  Additionally, you asked
specifically whether the City of Port Arthur may lease a
spoil disposal site to a private individual with exclusive
rights of fishery.  We are unable to answer the general
questions since jurisdiction and property rights neces-
sarily depend upon the facts of each case and the type
of jurisdiction asserted.  However, the authorities which
bear upon these questions are discussed with reference
to the specific question concerning Port Arthur.

The property in question was sold to the city pur-
suant to Acts 1967, 60th Leg., ch. 206, at 452, which
provides in part:

> Section 1.  The City of Port Arthur,
> being in dire need of an area for com-
> mercial, recreational and industrial
> development, and in order to provide a
> spoil area to the Corps of Engineers for
> re-working and cleaning out the Intra-
> coastal Canal in the Sabine Lake area,
> is hereby authorized to purchase the
> following described lands . . . .
>
> Section 2.  . . . the Commissioner of
> the General Land Office is hereby autho-
> rized to convey to the City of Port Arthur
> the following described lands with all oil,

> gas, and other minerals reserved to the
> state, along with the leasing rights as
> presently set out by current law . . . .

See Lakefront Trust, Inc. v. City of Port Arthur, 505 S.W.2d 606 (Tex. Civ. App. -- Beaumont 1974, writ ref'd n.r.e.) (involves land conveyed to the City of Port Arthur pursuant to this statute). The subject property has been used by the Corps of Engineers for a spoil disposal site; the Corps has constructed a levee which separates the area from the waters of Sabine Lake. We have been informed that the only connection with the lake waters is a drain pipe which is usually clogged and is opened only when the Corps is dumping spoil into the area, approximately once every three years. Thus it appears that the waters in the spoil disposal area, while formerly constituting a portion of Sabine Lake, are at present generally not subject to the ebb and flow of the tide.

It is generally held that a conveyance by the State of the bed under navigable or public water does not, absent a clear expression to the contrary, convey the waters or exclusive rights of fishery; rather, the grantee takes the bed subject to the piscatory rights of the public. Heard v. Town of Refugio, 103 S.W.2d 728 (Tex. 1937); North American Dredging Co. v. Jennings, 184 S.W. 287 (Tex. Civ. App. -- Galveston 1916, no writ). See Carter v. Hawaii, 200 U.S. 255 (1906); Diversion Lake Club v. Heath, 86 S.W.2d 441 (Tex. 1935); H. Farnham, The Law of Waters and Water Rights § 401 (1904). Furthermore, section 5.021(a) of the Water Code provides in part:

> The water of the ordinary flow, underflow,
> and the tides of every . . . lake, and of
> every bay or arm of the Gulf of Mexico . . .
> is the property of the state.

See also City of Galveston v. Mann, 143 S.W.2d 1028 (Tex. 1940). Consequently, if the water in the spoil disposal area was navigable or public at the time of the conveyance to the city, the state retained ownership thereof, and thus of the fish therein. Stephenson v. Wood, 34 S.W.2d 246 (Tex. 1931); Parks and Wildlife Code § 1.011(c).

However, in Diversion Lake Club v. Heath, supra, the court noted that:

> The general rule is well established . . .
> that the right to fish in a stream, whether
> belonging to the public in common or ex-
> clusively to the owners of the land bordering

the stream, is determined by the ownership
of the bed.

86 S.W.2d at 443.   In that case the court apparently refused to
follow this rule with regard to navigable or public waters,
but see Fisher v. Barber, 21 S.W.2d 569 (Tex. Civ. App. --
Beaumont 1929, no writ), but it appears applicable to non-
navigable waters.   See, e.g., Reed v. State, 175 S.W.2d 473
(Tex. Civ. App. -- Eastland 1943, no writ); Taylor Fishing
Club v. Hammett, 88 S.W.2d 127 (Tex. Civ. App. -- Waco 1935,
writ dism'd); Fin & Feather Club v. Thomas, 138 S.W. 150 (Tex.
Civ. App. -- Dallas 1911), rev'd on other grounds, 171 S.W. 698
(Tex. 1914).   See Henrietta Country Club v. Jacobs, 269 S.W.
137 (Tex. Civ. App. -- Ft. Worth 1924, no writ); Arkansas Game
& Fish Comm'n v. Storthz, 29 S.W.2d 294 (Ark. 1930).   Thus if
the waters of the disposal area were neither navigable nor
within the ambit of section 5.021 of the Water Code, the sale
of the bed to the city carried with it the rights of fishery
in the waters over the bed.

We have been informed that the levee which separates the
disposal area from Sabine Lake was constructed in 1968 and 1969,
subsequent to the issuance of the patent upon such lands by
the State.   Thus at the time title to the bed was transferred,
the waters over the bed were subject to the ebb and flow of
the tide and were owned by the State.   The question therefore
becomes one of the effect of the subsequent separation of the
waters from Sabine Lake.

It is generally held that the ownership of lands formerly
submerged under navigable waters and caused to become dry by
artificial means remains in the State.   Lorino v. Crawford
Packing Co., 175 S.W.2d 410 (Tex. 1943); Lakefront Trust, Inc.
v. City of Port Arthur, 505 S.W.2d 606 (Tex. Civ. App. --
Beaumont 1974, writ ref'd n.r.e.).   However, this rule of law
is not directly applicable to your question since the city holds
title to the submerged lands to begin with.   We have discovered
no direct authority upon the question of the effect upon title
to State waters of a severance thereof by artificial means.

In our understanding the depth of the water in the disposal
area averages 2 to 2-1/2 feet.   You state that the area will "be
filled with spoil to an elevation of 12 feet in about 50 years."
Thus we are dealing with a body of water which will have de-
creasing utility to the public as it is eventually converted
to dry land.   There is no question that the city will own the
land when it is no longer submerged.   The legislative act which
authorized the sale specifically reserved only the mineral rights
to the land.   Acts 1967, 60th Leg., ch. 206, § 2, at 452.   The

beds were conveyed for "commercial, recreational and industrial development, and in order to provide a spoil area to the Corps of Engineers. . . ." Acts 1967, 60th Leg., ch. 206, § 1, at 452. Thus the Legislature expressly authorized the severance of a reasonable area from Sabine Lake for use as a spoil disposal site and thereby acknowledged that the waters in such an area would eventually disappear. See Reed v. State, supra (holding that a nonnavigable lake upon lands of the State which have been dedicated to agricultural purposes was no longer a part of the public domain). See generally City of Newport Beach v. Fager, 102 P.2d 438 (Cal. Ct. App. 1940). Accordingly, while the matter is not free of doubt due to the lack of direct authority, in our opinion the City of Port Arthur, under these somewhat unique circumstances, probably obtained title to the waters in the disposal area upon the severance thereof from the waters of Sabine Lake.

The final issue is whether and under what circumstances may the city lease these waters in light of their past use by the public for fishing. It is generally held that land dedicated to public use as a park may not be leased in such a manner as to impair that use. Zachry v. City of San Antonio, 305 S.W.2d 558 (Tex. 1957); see City of Port Arthur v. Young, 37 S.W.2d 385 (Tex. Civ. App. -- Beaumont 1931, writ ref'd). However, no person has a vested property right in fish owned by the State; the public's rights may be restricted in the interest of conservation. Dodgen v. Depuglio, 209 S.W.2d 588 (Tex. 1948); see Stephenson v. Wood, 34 S.W.2d 246 (Tex. 1931). In Henrietta Country Club v. Jacobs, supra, the court held that a municipality had no duty to provide public fishing grounds and could therefore lease a reservoir to a private club. The club was granted exclusive rights to the use of the reservoir in return for its obligation to protect the purity of the water for use as the municipal water supply. The court noted that the actions of the lessee had in fact resulted in a cleaner reservoir. In the absence of authority bearing upon these unique circumstances, we are unable to predict with certainty whether the courts would require a public benefit as an incident to any lease of the waters; however, it is likely that such a benefit would be a factor in the examination of the legality of a specific lease. See Reed v. State, supra; Henrietta Country Club v. Jacobs, supra. Considering the decreasing public utility of these waters, a court could well decide that the controlled production of aquatic life would be a proper use of these waters, especially if the public is benefited thereby. In this respect we note that it has been suggested that a lessee could release a significant amount of fish life into the public waters.

In light of the legislative authorization for commercial uses of the land transferred to Port Arthur, in our opinion the city, for adequate consideration, may lease the waters in the spoil disposal site to a private person for the controlled production of aquatic life.

Your office has also questioned the effect of the ingress and egress of publicly owned marine life to the area. We are aware of no statute which claims fish in private waters to be the property of the State regardless of their origin. See Parks & Wildlife Code § 1.011. The case law indicates that the title to fish and the right of fishery depends upon the character of the waters rather than the origin of the fish. Diversion Lake Club v. Heath, supra; Taylor Fishing Club v. Hammett, supra; Fin & Feather Club v. Thomas, supra. In Taylor Fishing Club v. Hammett the court noted that "large quantities of fish habitually pass from the [public] river to the lake," 88 S.W.2d at 128, but held that the owner of the bed of the nonnavigable lake held the exclusive right of fishery. Thus the import of the ingress and egress of marine life is dependent upon the manner thereof and the possible effect upon the ownership of the waters. An open connection between Sabine Lake and the waters of the disposal area may subject such waters to the claim of the State under section 5.021 of the Water Code, for the disposal area may thereby become subject to the ebb and flow of the tide. Such a result would be consistent with the authorities which hold that private ownership of land is lost when the land becomes occupied by public waters. Lakefront Trust, Inc. v. City of Port Arthur, supra, and authorities cited therein. Thus the opening of a connection between Sabine Lake and the disposal area may void a lease due to the city's loss of title to the waters. With this observation, in our opinion the ingress of public marine life would not in itself affect the legality of a lease of the disposal area.

### S U M M A R Y

Under the circumstances discussed above, for adequate consideration the City of Port Arthur may lease a spoil disposal site for production of marine life.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jst